[No. 35078-1-I.   Division One.   December 18, 1995.]

*In the Matter of the Marriage of* JOHN WILLIAM PETERSON, *Appellant, and* MARIANNE PETERSON, *Respondent.*

---

[10]*See Scott v. United States*, 436 U.S. 128, 137-38, 98 S. Ct. 1717, 56 L. Ed. 2d 168 (1978); *State v. Barber*, 118 Wn.2d 335, 349, 823 P.2d 1068 (1992).

*John W. Peterson*, pro se.

*Ralph W. Moldauer* and *Lawrence, Moldauer & Marshall*, for respondent.

COLEMAN, J. — John Peterson appeals an increase in his child support obligation, arguing that the trial court

erred when it imputed income to him and transferred income tax exemptions for his children to his ex-wife, Marianne Hales (formerly Peterson). We find that the trial court properly addressed the exemption issue but erred in concluding that Peterson was not gainfully employed. Accordingly, we affirm in part and reverse in part.

Peterson and Hales separated in 1989. They had three children, who were between the ages of six and nine. In September 1990, Peterson and Hales executed a property settlement agreement and a permanent parenting plan, which the trial court apparently approved. The parenting plan provided that the children would reside with Peterson approximately 45 percent of the time. The financial support section of the plan directed Peterson to pay Hales $625 per month in child support and awarded him the income tax exemptions for all of the children.

The following February, the court entered a decree of dissolution[1] and approved a second permanent parenting plan signed by the parties. The income tax exemptions were addressed in the dissolution decree and were again awarded to Peterson. Two weeks after that decree was entered, the trial court reduced Peterson's child support obligation to $335 per month. Because Peterson was unemployed at the time, the trial court calculated that amount by imputing $1,936 monthly net income to him. The court reduced the standard child support amount by a residential credit, which compensated for the amount of time the children resided with Peterson according to a statutory formula.

Three years later, Hales filed a petition for modification of child support asking the trial court to (1) impute a monthly gross income of $5,000 to Peterson based on his ability to earn and (2) award her the tax exemptions for the three children. The parties' trial briefs reveal the following facts.

---

[1]Although the parties indicate in their briefs that a dissolution decree was entered on October 26, 1990, the record presented to this court on appeal reflects that dissolution was granted on February 27, 1991.

Peterson graduated from Gonzaga Law School and passed the Washington State Bar in 1978. He spent 12 years working for a union as a contract negotiator and as a personnel specialist. When the union lost a vote of confidence in 1990, he lost his job. He worked as a laborer until the middle of 1992, when he obtained a position at Hyatt Legal Services. Hyatt closed its Seattle office three months later, and Peterson was again out of work. He opened a law practice in his home, but it generated little income.

Peterson's annual income rose while he worked for the union then decreased dramatically after he lost that job.

| Year | Income | Year | Income |
|------|--------|------|--------|
| 1984 | $16,268 | 1989 | $23,927 |
| 1985 | 14,885 | 1990 | 12,208 |
| 1986 | 14,885 | 1991 | 8,733 |
| 1987 | 15,448 | 1992 | 8,170 |
| 1988 | 21,933 | 1993 | 3,555 |

In the spring of 1994, Peterson worked as an undercover store security detective, earning a monthly gross income of $1,161. In April of that year, he began working full-time for a bail bond company as in-house legal counsel and bail bond agent. He earns approximately $1,500 gross income per month in this position, or $18,000 per year.

A contested hearing on affidavits was held on June 10, 1994. The trial court found that Peterson was voluntarily underemployed within the meaning of RCW 26.09.071(6) and imputed income to him based on the median net income for a man his age as set forth in the Washington State Child Support Schedule.

[T]he Court determines the word "gainfully" is significant in determining whether Mr. Peterson is voluntarily underemployed. Considering that Mr. Peterson has a college education and law school education, is 43 years of age, and yet earns less than one-half the median net income set forth in the Support Schedule for a person of his age, despite his higher education, establishes to this Court that Mr. Peterson is voluntarily underemployed.

The court denied Peterson's motion for reconsideration, stating that

> [f]ull-time income earned at a level that is one-half the median income for a male Petitioner's age and educational level is considered to be non-*gainful* full-time employment, and is significantly less than would be expected from Petitioner based on his age, education, and employment history. It is not necessary for the Court to exclusively determine that Petitioner has reduced income for the purpose of avoiding child support.

The trial court imputed $2,118 net monthly income to him, which resulted in a standard child support obligation of $676 per month.

Peterson asked the trial court to deviate from the standard calculation to reflect both the amount of time the children resided with him and the income of Hales' current husband. Stating that it was obvious his living costs had increased because he had the children 45 percent of the time, he argued that Hales bore the burden of showing that her expenses remained constant under the residential schedule. The court refused to deviate from the standard calculation, finding Peterson had not established a reason to depart from the standard amount and that Hales' spouse had a child support obligation for children from a prior marriage.

The court awarded the income tax exemption to Hales starting in the 1994 tax year. Peterson moved for reconsideration, arguing that the income tax exemption award was not properly before the court. The court denied the motion, stating that the court had authority to transfer an exemption award because it related to child support.

■ ■ The appellate court will overturn an award of child support only when the party challenging the award demonstrates that the trial court's decision is manifestly unreasonable, based on untenable grounds, or granted for untenable reasons. *In re Stenshoel*, 72 Wn. App. 800, 803,

866 P.2d 635 (1993); *In re Curran*, 26 Wn. App. 108, 110, 611 P.2d 1350 (1980). Because this case turns on interpretation of child support statutes, we must determine whether the trial court erred as a matter of law. *In re Stern*, 68 Wn. App. 922, 929, 846 P.2d 1387 (1993).

### IMPUTED INCOME

The child support statute directs the trial court to make two inquiries when considering whether to impute income. First, the trial court evaluates the parent's work history, education, health, age, and any other relevant factor to determine whether that parent is voluntarily unemployed or underemployed. RCW 26.19.071(6). If a parent is underemployed but also "gainfully employed on a full-time basis," the court must make a further determination as to whether the parent is "purposely underemployed to reduce the parent's child support obligation." If not underemployed for that reason, the parent may not have income imputed to him. RCW 26.19.071(6).[2]

■ Gainful employment, a term left undefined by the child support statute, could arguably be defined in two ways. One definition focuses on whether the employment is compensated by a salary or wage, while the alternative definition looks to the nature of the employment and whether it is the person's usual or customary occupation. *See* BLACK'S LAW DICTIONARY 678 (6th ed. 1990) (defining "gainful" and "gainful employment"). We note that, in other contexts, the Legislature has defined gainful employment in accord with the first definition. *See* RCW

---

[2]RCW 26.19.071(6) provides in relevant part:

"The court shall impute income to a parent when the parent is voluntarily unemployed or voluntarily underemployed. The court shall determine whether the parent is voluntarily underemployed or voluntarily unemployed based upon that parent's work history, education, health, and age, or any other relevant factors. A court shall not impute income to a parent who is gainfully employed on a full-time basis, unless the court finds that the parent is voluntarily underemployed and finds that the parent is purposely underemployed to reduce the parent's child support obligation."

7.68.020(5) (crime victim's compensation law defines "gainfully employed" as "engaging on a regular and continuous basis in a lawful activity from which a person derives a livelihood"); WAC 296-18A-420(2) (vocational rehabilitation regulations define "gainful employment" as "any occupation . . . which allows a worker to be compensated with wages or other earnings").

Under the first definition, Peterson's employment is gainful because he earns approximately $18,000 per year. Applying the term gainful in this manner does not allow parents to remain underemployed without consequence; the statute specifically addresses parents who reduce their income to lower child support and allows the trial court to impute income to them at an appropriate level. The trial court in the present case did not find, and, in fact, Hales did not contend, that Peterson had purposefully sought his current employment to reduce child support.

Under the second definition, Peterson's current employment and income appear to be consistent with his work history. Peterson has little experience in traditional legal practice, and Hales does not argue that his work with the union, for which he earned between approximately $15,000 and $24,000 annually, was not gainful. Because his present income falls within this range, it is difficult to conclude that his employment as legal counsel and bail bond agent is not gainful when compared with his work and income history. This conclusion is also consonant with the purpose of child support, which is to ensure that a child maintains a lifestyle commensurate with what the parents would have provided had they stayed together.

The trial court's decision in this case is not consistent with either definition of gainful. Instead, the court found Peterson's employment not gainful by comparing his income, age, and education to national averages. We agree with Peterson that this is an untenable basis for imputing income under the statute. Although the definitions of gainful vary somewhat, neither permits an interpretation

requiring a parent to earn income at or near the top of his or her capabilities as gauged by that person's education and age. The language of the statute and the scheme for calculating an underemployed parent's income do not embody a legislative policy determination that parents should be considered ungainfully employed whenever they are more educated than the average person but earn less than the national median income for their age.

Because Peterson was gainfully employed full-time and no finding was made that he was purposely underemployed to reduce his child support obligation, the statute does not allow income to be imputed to him. Remand is therefore necessary to recalculate child support.[3]

## INCOME TAX EXEMPTIONS

■ We find no merit in Peterson's argument that the trial court lacked authority to modify the tax exemption award. First, Peterson provides no authority in support of his assertion that the exemptions should be characterized as marital property as a matter of law. Research conducted by this court revealed only one jurisdiction in which income tax exemptions have been referred to as marital property. *Hughes v. Hughes*, 35 Ohio St. 3d 165, 518 N.E.2d 1213 (holding federal law on exemption does not divest state court of jurisdiction to award exemption as part of division of marital property), *cert. denied*, 488 U.S. 846 (1988). Courts in that jurisdiction are currently authorized by statute, however, to reconsider tax exemption awards whenever they modify child support. Ohio Rev. Code Ann. § 3113.21(C)(1)(f). No authority was found in support of the proposition that tax exemption awards should never be transferred because they constitute marital property.

Second, the record fails to support Peterson's argument that he and Hales divided the exemptions as marital property in this case. The property settlement agreement

---

[3]In light of our disposition, we need not address Peterson's argument that the trial court abused its discretion in refusing to grant a deviation based on residential time or spousal income.

did not address the tax exemptions as marital property; it merely referenced the document in which the exemptions were originally awarded. In the second set of dissolution documents, the exemptions were awarded in the dissolution decree itself.

Third, Peterson's argument that the trial court could transfer the tax exemptions pursuant only to a petition to modify the parenting plan is unconvincing. The original parenting plan set child support and awarded the exemptions in the same paragraph, treating the exemptions as an aspect of child support. Moreover, that parenting plan appears to have been superseded by the parenting plan signed four months later, which left award of the exemptions to the dissolution decree.

Finally, tax exemptions for dependent children are generally considered to be an element of child support. *See, e.g., Kidd v. Kidd*, 832 P.2d 566, 570-71 (Wyo. 1992); *In re Axmear-Heikenen*, 529 N.W.2d 304, 306 (Iowa Ct. App. 1995); *Fowler v. Fowler*, 158 Wis. 2d 508, 463 N.W.2d 370, 377 (1990), *review denied*, 465 N.W.2d 655 (1991); *Freeman v. Freeman*, 29 Ark. App. 137, 778 S.W.2d 222, 224 (1989); *Corey v. Corey*, 712 S.W.2d 708, 710 (Mo. Ct. App. 1986). *See also* Order of Child Support, WPF DR 01.0500 (1994) (includes section for allocating income tax exemptions). This is based on the premise that a child's best interests are served when the financial situations of the parents are maximized. To ensure that an exemption is used efficiently as tax laws, income levels, and child support obligations change, the trial court must retain the authority to allocate exemptions to the party who will benefit most from them. The trial court in the present case properly considered the tax exemption award.

The portion of the trial court's order transferring the income tax exemptions is affirmed. The remainder of the order is reversed and the case remanded for recalculation of child support.

BAKER, C.J., and AGID, J., concur.

Review denied at 129 Wn.2d 1014 (1996).