[No. 17509-0-III.   Division Three.   January 27, 2000.]
*In the Matter of the Marriage of* MARTIN WAYNE POLLARD, *Appellant*, and JOAN SIGEL POLLARD BROOKINS, *Respondent*.

50

*Nancy R. McAllister,* for appellant.
*Joshua F. Grant VII,* for respondent.

SCHULTHEIS, J. — A parent may not avoid a child support obligation by voluntarily remaining unemployed or underemployed. *In re Marriage of Foley,* 84 Wn. App. 839, 843, 930 P.2d 929 (1997). Joan Pollard Brookins's petition for modification of a child support order was granted, decreasing the amount she paid to her ex-husband, Martin Pollard, for support of the couple's two children. Mr. Pollard appeals, contending the trial court erred in failing to impute income to Ms. Brookins, who quit working full time to care for the two children of her new marriage. We reverse and remand for recalculation of child support.

The Pollards were divorced in Washington in October 1989. The support order entered at that time provided that Ms. Pollard would pay Mr. Pollard, as custodial parent, $217 per month for the couple's two children, born in 1983 and 1984.

In January 1997, Ms. Pollard, now Ms. Brookins, petitioned in Lincoln County for modification of the child sup-

port order, claiming change in income.[1] Both Mr. Pollard and Ms. Brookins had been in active military service while married. After remarriage and the birth of two additional children, Ms. Brookins had left military service and now worked part time for the military while working full time as a mother and homemaker. She lived in Norfolk, Virginia. Mr. Pollard had also remarried and moved from the state, and was now living in Astoria, Oregon. He, too, had left the military and was attempting to find full-time work in the private sector.[2]

Affidavits from the parties indicate that during 1997 Mr. Pollard earned approximately $31,000 as an electrician. During the last year of her full-time military employment, Ms. Brookins earned approximately $22,150. By January 1998, Ms. Brookins was a full-time mother and homemaker, making approximately $323 per month in her part-time work for the military. She requested reduction of her support obligation to $58 per month ($29 per child), effective from the date she filed the petition in January 1997.

In April 1998, the trial court modified the support order, reducing Ms. Brookins's obligation to $85 per month ($42.50 per child), with a starting date of February 1, 1997. Because Ms. Brookins had been overpaying since that date, the court granted her a credit for overpayment. As a result, her first payment is due in August 2000. In the findings and conclusions entered on the modification, the court indicated the original order had been modified because Ms. Brookins's income had been substantially reduced. The court concluded that "[t]he mother is not voluntarily underemployed with an intent to avoid child support but is working as a mother in the home full time raising chil-

---

[1]Ms. Brookins filed the petition pro se and designated Mr. Pollard as "petitioner" and herself as "respondent."

[2]Mr. Pollard had received notice that his ex-wife would be seeking modification and had filed his financial statement and answer before she actually filed the petition.

dren." Each party was ordered to pay his or her own attorney fees.

## MODIFICATION OF CHILD SUPPORT

Mr. Pollard argues on appeal that the trial court erred in failing to impute income to Ms. Brookins, a career woman who voluntarily quit working full time to work part time and care for the two children of her new marriage.

■ A trial court exercises broad discretion in modification of the child support provisions of a divorce decree. *In re Marriage of Blickenstaff*, 71 Wn. App. 489, 498, 859 P.2d 646 (1993). We review a trial court's decision regarding child support for abuse of discretion, recognizing that such decisions are seldom disturbed on appeal. *In re Marriage of Griffin*, 114 Wn.2d 772, 776, 791 P.2d 519 (1990). In setting child support, the trial court must take into consideration all factors bearing upon the needs of the children and the parents' ability to pay. *Blickenstaff*, 71 Wn. App. at 498 (citing former RCW 26.19.020). Overall, the child support order should meet each child's basic needs and should provide any "additional child support commensurate with the parents' income, resources, and standard of living." RCW 26.19.001. To facilitate these goals, the Legislature directs that the child support obligation should be "equitably apportioned between the parents." RCW 26.19.001.

■ In proceedings to modify child support, the trial court applies the uniform child support schedule, basing the support obligation on the combined monthly incomes of both parents. RCW 26.19.020, .035(1)(c), .071(1); *In re Marriage of Brockopp*, 78 Wn. App. 441, 445, 898 P.2d 849 (1995). Voluntary unemployment or underemployment will not allow a parent to avoid his or her financial obligation to the children who are the subjects of the support order. *In re Marriage of Shellenberger*, 80 Wn. App. 71, 81, 906 P.2d 968 (1995). When assessing the income and resources of each household, the court must impute income to a parent when that parent is voluntarily unemployed or voluntarily

underemployed. RCW 26.19.071(6). The court determines whether to impute income by evaluating the parent's work history, education, health, age and any other relevant factor. RCW 26.19.071(6); *In re Marriage of Peterson*, 80 Wn. App. 148, 153, 906 P.2d 1009 (1995), *review denied*, 129 Wn.2d 1014 (1996). If the court decides the parent is "gainfully employed on a full-time basis," but also underemployed, the court makes a further determination whether the parent is purposely underemployed to reduce his or her support obligation. RCW 26.19.071(6);[3] *Peterson*, 80 Wn. App. at 153.

█ In this case, the trial court found that Ms. Brookins was "working as a mother in the home full time raising children" and refused to impute income because it found that she was "not voluntarily underemployed with an intent to avoid child support[.]" This finding is open to two interpretations. One, the court may have meant that Ms. Brookins was a full-time worker, voluntarily underemployed, but not with an intent to avoid child support. Pursuant to RCW 26.19.071(6), however, an underemployed parent may not escape imputation of income unless he or she is <u>gainfully</u> employed on a full-time basis and is not underemployed to reduce the support obligation. Because Ms. Brookins's full-time work as a mother and homemaker is not "gainful,"[4] she does not come within this provision of RCW 26.19.071(6).

Two, the court may have meant that Ms. Brookins was

---

[3]The relevant part of RCW 26.19.071(6) provides that:

"The court shall impute income to a parent when the parent is voluntarily unemployed or voluntarily underemployed. The court shall determine whether the parent is voluntarily underemployed or voluntarily unemployed based upon that parent's work history, education, health, and age, or any other relevant factors. A court shall not impute income to a parent who is gainfully employed on a full-time basis, unless the court finds that the parent is voluntarily underemployed and finds that the parent is purposely underemployed to reduce the parent's child support obligation."

[4]"Gainful" is described in *Peterson*, 80 Wn. App. at 153, as employment compensated by a wage or as the person's usual or customary occupation. Ms. Brookins presented no evidence that she earned a wage for mothering or that the job of full-time caregiver was similar to other jobs in her work history. *Id.* at 154.

not voluntarily underemployed. The facts do not support this interpretation. Clearly Ms. Brookins's choice to leave the military and her former salary of over $22,000 per year (based on a 1995 W-2 form) was voluntary, motivated by her desire to raise the two young children of her new family. *Blickenstaff*, 71 Wn. App. at 493 (voluntary means the result of free choice; intentional rather than accidental). While laudable, these actions cannot adversely affect her obligation to the two older children she had with Mr. Pollard. As noted in *Atkinson v. Atkinson*, 420 Pa. Super. 146, 152, 616 A.2d 22, 25 (1992) (Del Sole, J., dissenting), "[b]y choosing not to allow a parent to escape child support obligations because of the existence of a new family we are recognizing the needs of children to the love, support, and sacrifice of both parents." If the shoe were on the other foot, and a noncustodial father sought to reduce his child support obligation because he chose to stay home with his children from a new marriage, most courts would impute income to such a voluntarily unemployed or underemployed parent. *See, e.g., Brody v. Brody*, 16 Va. App. 647, 651, 432 S.E.2d 20, 22 (1993) ("If the roles in this case had been reversed, and the father chose to leave his job and stay home to care for the children of another marriage, we would not, without more, uphold an elimination of his obligation to support his other children. The mother should be held to a like standard.").

Under either interpretation of the findings, the trial court abused its discretion in finding that Ms. Brookins was not voluntarily underemployed and in failing to impute income to her. Accordingly, we reverse the order of child support modification for abuse of discretion. Remand is necessary to recalculate child support.

■ We note that the determination of the child support obligation need not end with imputation of income, however. Once the incomes, including imputed incomes, of the parents have been determined and a presumptive support obligation has been set, the trial court has discretion to deviate from the standard calculation on the basis of a

parent's duty to support other children. RCW 26.19-.075(1)(e). Deviation from the standard support obligation is appropriate when it would be inequitable not to do so. *In re Marriage of Burch*, 81 Wn. App. 756, 760, 916 P.2d 443 (1996). As stated in RCW 26.19.075(1)(e)(iv), "[w]hen the court has determined that either or both parents have children from other relationships, deviations under this section shall be based on consideration of the total circumstances of both households," including the costs of substitute child care and the income of a new spouse (RCW 26.19.075(1)(a)(i)). If the trial court on remand decides that reason exists for deviation, it will exercise its discretion in considering the extent to which the factors affect the support obligation. RCW 26.19.075(4).

## EFFECTIVE DATE OF MODIFICATION

After modifying downward Ms. Brookins's child support obligation, the trial court ruled that the modification was effective as of the date she filed the petition, over a year earlier. Mr. Pollard challenges the effective date of the modification because he contends Ms. Brookins did not initially file all the required documents pursuant to RCW 26.09.175(1). According to the statute, the modification proceedings "shall commence with the filing of a petition *and worksheets.*" RCW 26.09.175(1) (emphasis added). Ms. Brookins did not file the worksheets until January 1998, one year after filing the petition.

RCW 26.09.170(1)(a) provides that modifications may be made only to those child support installments that accrue "subsequent to the petition for modification[.]" The trial court has discretion to make the modification effective upon the filing of the petition, upon the date of the order of modification, or any time in between. *Chase v. Chase*, 74 Wn.2d 253, 259, 444 P.2d 145 (1968), *cited in In re Marriage of Oblizalo*, 54 Wn. App. 800, 803 n.3, 776 P.2d 166 (1989). We find no statutory mandate that all required documents must be attached before a motion for modifica-

tion is deemed filed. Complete and accurate worksheets must be filed eventually (RCW 26.19.035(3)), but even in those cases where a parent utterly fails to file a worksheet, the court may consider the petition to modify and rather than reject it, may simply find that modification is not supportable. *See, e.g., Blickenstaff,* 71 Wn. App. at 500-01. We find that the trial court did not abuse its discretion in setting the effective date of the modification on the date the petition was filed, even though the worksheets were filed a year later.

## ATTORNEY FEES

Finally, Mr. Pollard contends the trial court should have awarded him attorney fees. RCW 26.09.140 gives the trial court discretion to award attorney fees in domestic relations proceedings after balancing the needs of the requesting spouse against the ability of the other spouse to pay. *In re Marriage of Leslie,* 90 Wn. App. 796, 805, 954 P.2d 330 (1998), *review denied,* 137 Wn.2d 1003 (1999).

Mr. Pollard requested attorney fees and costs below for defending the petition and for bringing the motion for reconsideration. Ms. Brookins did not request fees and recommended to the court that each party should pay his or her own fees and costs. With the financial statements of the parties before it, the trial court decided that each was responsible for his or her fees. Mr. Pollard cannot show that this decision was an abuse of discretion. He appears to argue fees were warranted due to Ms. Brookins's delay tactics. Because he cites no authority to support such a claim, we decline to address it. RAP 10.3(a)(5); *Burnet v. Spokane Ambulance,* 131 Wn.2d 484, 492 n.2, 933 P.2d 1036 (1997).

Each party also requests attorney fees on appeal. Ms. Brookins asks this court to consider not only the relative needs and ability to pay, but also the lack of merit in Mr. Pollard's issues. *Leslie,* 90 Wn. App. at 807. In exercising our discretion to award attorney fees and costs on appeal, we must consider the parties' financial resources and the

arguable merit of the issues. *In re Marriage of C.M.C.*, 87 Wn. App. 84, 89, 940 P.2d 669 (1997), *aff'd*, 136 Wn.2d 800, 966 P.2d 1247 (1998). Mr. Pollard's appeal has merit. To have their resources considered, usually the parties must file financial declarations pursuant to RAP 18.1(c) at least 10 days before the date set for argument. *C.M.C.*, 87 Wn. App. at 89. Based on circumstances unique to this case, we waive the timeline of RAP 18.1(c) and allow the parties to file their financial declarations within 10 days after the filing of this decision. RAP 1.2(c).

Reversed and remanded for recalculation of child support.

BROWN, A.C.J., and SWEENEY, J., concur.