# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| BRAD M. GOODSPEED,<br><br>　　　　　　　　Appellant,<br><br>　　v.<br><br>DEPARTMENT OF SOCIAL AND HEALTH SERVICES,<br><br>　　　　　　　　Respondent. | No. 73935-2-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: November 16, 2015 |

LEACH, J. — Brad M. Goodspeed appeals a superior court decision affirming an administrative law judge's child support order that imputed income to him. Because the record supports the administrative law judge's determination that Goodspeed provided incomplete, unclear, and unreliable evidence of his income, she appropriately imputed income to Goodspeed. And Goodspeed fails to show how the State's participation in the administrative hearings prejudiced him or that the administrative law judge erroneously applied the law. Finally, we do not award Goodspeed attorney fees because he has not substantially prevailed. We affirm the superior court.

## Background

Brad M. Goodspeed and Olga Rodriguez are parents to H.G., who was born in 1999. Rodriguez, as the custodial parent, requested child support services from the Department of Social and Health Services (DSHS) Division of

Child Support (DCS). DCS issued Goodspeed a notice and finding of financial responsibility establishing child support.

A custodial parent not receiving public assistance may ask DCS to establish and enforce another parent's child support obligation through an administrative process.[1] After DCS issues a notice and finding of financial responsibility, either parent may object by requesting a hearing.[2] DCS then refers the request to the Office of Administrative Hearings.[3]

DSHS sent Goodspeed a notice that he was responsible for $646.00 in monthly child support payments based on an imputed median net income of $3,735.00 due to his long-term self-employment. Goodspeed disagreed with the amount of support and requested an administrative hearing. After a hearing on April 16, 2012, the administrative law judge (ALJ) issued an order establishing Goodspeed's child support obligation calculated by imputing income to Goodspeed based on the census bureau's median net income of males in Goodspeed's age category. Goodspeed sought judicial review. The superior court reversed for failure to make sufficient findings. On remand, the ALJ held a second evidentiary hearing and issued a final order requiring Goodspeed to pay $706.45 per month in child support. The ALJ again imputed income to Goodspeed based on the census bureau's median net monthly income of males

---

[1] RCW 74.20A.055; WAC 388-14A-2000(2).
[2] RCW 74.20A.055; WAC 388-14A-3110.
[3] WAC 388-14A-3130(2).

aged 55-64, $3,735.00 per month. The ALJ made findings as required by the superior court's decision and found much of Goodspeed's testimony not credible.

The ALJ's findings outline Goodspeed's history of self-employment and various business ventures. In the 1970s, Goodspeed worked as a stock clerk, later operated a body shop, and then went into construction and land development, making about $1,500 to $3,000 per month, which he did through the 1980s. In the 1990s, he worked on construction of homes and subdivisions and in the late 1990s worked on remodeling commercial warehouses, making between $2,000 and $3,000 per month. From 2004 to 2008, he worked as a consultant for a charter air taxi for about $2,500 per month.

At the time of the second administrative hearing, Goodspeed was 57 years old, weighed 260 pounds, had a high school degree, and had between 8 and 12 years of business consulting experience. Goodspeed has four current positions of employment but receives monetary compensation for only two of them. He works full time, about 50 hours per week, spending half the week in business consulting, driving limos about one day a week, and managing property the rest of the time.

He provides consulting services to his older daughters' flight training and aircraft rental business, Blue Ribbon Holdings, which operates at Boeing Field. Blue Ribbon pays him per trip for consulting trips he makes to Seattle about once a week: $100.00 per trip unless he consults about a litigation matter, for which he receives $500.00. He also consults for Radix Marine, a company that submits

bids to sell patrol craft for military and drug interdiction and contracts out the building of the patrol craft. Radix Marine's president is 82-year-old Fred Lartz, Goodspeed's friend and roommate. The company does not have additional employees. In 2007, Radix issued Goodspeed shares in exchange for a multiyear consulting agreement. Goodspeed valued the shares at between $17,000.00 and $70,000.00, sold them in 2009, and continues to consult in order to fulfill his contractual obligation. Goodspeed estimated the value of his labor at $150.00 per day. Goodspeed also operates a limousine business that conducts wine tours. He charges $270.20 per tour and receives between $20.00 and $80.00 in tips per trip, with five trips booked from June to August 2013.

Goodspeed also manages an aircraft hangar property in Yakima. In 2008 he purchased the property through a company he owned, M.A. West Rockies. Until 2010, he operated a business grossing $3 million per year by selling fuel, conducting charter flights, and offering flight training. In 2010 the Yakima Air Terminal terminated his lease that connected his property to the airport. In 2011 he conveyed the M.A. West Rockies property to a lender in lieu of foreclosure. He then provided various consulting services to the lender, including for land use issues and reorganizing the property. M.A. West Rockies was dissolved in March 2011. Goodspeed manages the property in exchange for living in an aircraft hangar there without paying rent. He estimated the value of his services at between $800 and $900.

The ALJ concluded in her final order that Goodspeed is "capable of working full time and, is in fact, working full time." She concluded that based on the statutory factors such as work history, age, health, and education, he was "voluntarily underemployed for the purposes of reducing his child support obligation." While the superior court affirmed the second ALJ decision, the court expressed some reservations about some of the ALJ's positions. But the court concluded that substantial evidence supported the ALJ's findings, that the decision was not arbitrary or capricious, and that it did not contain errors of law.

Goodspeed appeals. Rodriguez failed to file a respondent's brief. DSHS filed a brief taking no position on the merits of the case, stating it filed the brief only to ensure the integrity and proper application of the law and process in keeping with its limited role in the matter.[4]

## Analysis

Goodspeed asserts that no evidence supports the ALJ's decision and that the ALJ's findings were "flawed, unsupported, confusing and hence arbitrary and capricious in nature." He asks this court to reverse the support order and remand for "proper, legal, and equitable calculation" of child support based on the record and RCW 26.19.071 and asks for fees and costs associated with bringing an appeal "as permitted by the statu[t]e." We review the record before the ALJ to determine if substantial evidence supports the finding that Goodspeed

---

[4] RCW 74.20.057(4).

was voluntarily underemployed to reduce his child support obligation and that income was properly imputed to Goodspeed.

The Washington Administrative Procedure Act (APA), chapter 34.05 RCW, requires that this court review the ALJ's decision, sitting in the same position as the superior court and applying the APA to the administrative record.[5] We provide relief from an agency order only where permitted under RCW 34.05.570, including where the order erroneously interprets and applies the law, substantial evidence does not support the order when viewed in light of the whole record, or where the order is arbitrary or capricious.[6] A willful and unreasoning decision that disregards or fails to consider the facts and circumstances is arbitrary and capricious, while a decision is not arbitrary or capricious if "there is room for more than one opinion and the decision is based on honest and due consideration."[7] "We review questions of law and an agency's application of the law to the facts de novo."[8] Goodspeed has the burden of demonstrating the invalidity of the agency's action.[9]

We first consider if substantial evidence supports the ALJ's findings. We affirm findings when a sufficient quantity of evidence could persuade a fair-

---

[5] Cornelius v. Dep't of Ecology, 182 Wn.2d 574, 584-85, 344 P.3d 199 (2015).
[6] RCW 34.05.570(3)(d), (e), (i).
[7] Stewart v. Dep't of Soc. & Health Servs., 162 Wn. App. 266, 273, 252 P.3d 920 (2011).
[8] Cornelius, 182 Wn.2d at 584-85.
[9] See RCW 34.05.570(1)(a).

minded person that a finding is correct.[10] Goodspeed argues that the evidence does not support the ALJ finding that he was voluntarily underemployed to reduce his child support obligation.

When calculating a child support obligation, RCW 26.19.071(6) requires that income be imputed to a parent where that parent is voluntarily unemployed or underemployed.[11] The ALJ must base this determination on the parent's "work history, education, health, and age, or any other relevant factors."[12] Generally, the ALJ may not impute income to a voluntarily underemployed parent who is nonetheless gainfully employed full-time.[13] But if the parent is underemployed to reduce the parent's child support obligation, the ALJ must impute income to that parent.[14]

Substantial evidence supports the ALJ's conclusion that Goodspeed is voluntarily underemployed to reduce his child support obligation.

Goodspeed argues first that he is not underemployed but simply in a difficult financial situation. He claims "the evidence showed that Mr. Goodspeed was gainfully employed and he was only making $2,000 to $2,500 per month."

---

[10] City of Redmond v. Cent. Puget Sound Growth Mgmt. Hr'gs Bd., 136 Wn.2d 38, 46, 959 P.2d 1091 (1998).

[11] In re Marriage of Pollard, 99 Wn. App. 48, 52-53, 991 P.2d 1201 (2000).

[12] RCW 26.19.071(6).

[13] RCW 26.19.071(6); In re Marriage of Peterson, 80 Wn. App. 148, 153, 906 P.2d 1009 (1995).

[14] RCW 26.19.071(6); Peterson, 80 Wn. App. at 153.

When imputing income, an ALJ looks to "the level of employment 'at which the parent is capable and qualified.'"[15] Goodspeed asserts that like the noncustodial parent in In re Marriage of Peterson,[16] he was gainfully employed full time. In that case, a trial court imputed income to Peterson, comparing his income, age, and education to national averages and finding that his monthly salary of $1,500 working as legal counsel for a bail bond company did not constitute gainful employment where he had passed the Washington State Bar.[17] But this court held that Peterson was gainfully employed because he earned $18,000 per year and because his employment and income were consistent with his work history.[18] The record in that case included Peterson's reliable income information, and Peterson's job was in keeping with his usual or customary occupation: though Peterson held a law degree, the record showed that he had little traditional legal experience, was gainfully employed full time, and was not voluntarily underemployed.[19]

But unlike Peterson, evidence of Goodspeed's income was inconsistent and showed that he is capable of making a higher income if he worked in a capacity consistent with his work experience. He has a background in business consulting and has been self-employed for 35 years. He values his work at Radix Marine, only one of his four positions, at $150 per day, though he received

---

[15] In re Marriage of Schumacher, 100 Wn. App. 208, 215, 997 P.2d 399 (2000) (quoting In re Marriage of Sacco, 114 Wn.2d 1, 4, 784 P.2d 1266 (1990)).
[16] 80 Wn. App. 148, 906 P.2d 1009 (1995).
[17] Peterson, 80 Wn. App. at 151-52, 154.
[18] Peterson, 80 Wn. App. at 154.
[19] Peterson, 80 Wn. App. at 153-54.

at most only $70,000 in shares for all of his work since 2007. While he spends between two and two-and-one-half hours per week consulting with Radix Marine and Blue Ribbon Holdings, he spends one day running his limousine business, and spends the remainder of his time managing property. Thus, substantial evidence shows that Goodspeed is voluntarily underemployed because he makes less than what someone with his background and experience generally earns. The result of a free choice to be voluntarily unemployed or underemployed, even with good reason, cannot adversely affect a parent's obligation to his or her child.[20]

Further, Goodspeed provided inconsistent income information to the ALJ. In In re Marriage of Dodd,[21] Division Three of this court affirmed the trial court's imputation of income for a self-employed noncustodial parent with unclear income records and where evidence showed he hid his income from the State to avoid child support payments. Similarly, here, the ALJ found that neither Goodspeed's tax returns nor the information he provided about his four sources of income make it possible to determine his actual income, also finding that Goodspeed has been "less than forthright about what his income actually is." She found that he failed to supply evidence only he had knowledge about, supplied incomplete records, and gave inconsistent information.

---

[20] Pollard, 99 Wn. App. at 53-54.
[21] 120 Wn. App. 638, 644, 86 P.3d 801 (2004).

This record does not contain reliable information about Goodspeed's current or past income. Goodspeed testified that he makes between $800.00 and $2,000.00 per month but did not provide any records demonstrating his current monthly earnings. Instead, he submitted a copy of an unfiled 2010 tax return reflecting an adjusted gross income of $10,828.30 and a schedule C reflecting a net profit of $11,161.92 for his limousine service and consulting business. But it reflects no information about the 2010 rent that M.A. West Rockies paid to the Yakima Air Terminal.[22] He also submitted a similar unfiled 2011 tax return reflecting an adjusted gross income of $15,863.86. He signed both in April 2012. He did not provide the trial court with any verification documentation to show his tax returns accurately reflected his income.[23] And contrary to the information he provided on his tax returns but consistent with his testimony, in January 2012 he reported net annual business income of $20,000.00 to $25,000.00 to DSHS. In a declaration given that same month, he reported making between $1,800.00 and $2,500.00 per month driving limousines

---

[22] Goodspeed asserts that the trial court failed to separate M.A. West Rockies revenue from his personal income and so improperly concluded that he should have included this information on his tax return. But his 2010 tax return should have included information about M.A. West Rockies on his schedule C Form 1040, requiring reporting of profit or loss from businesses. And in child support cases, absent a business necessity for keeping the earnings within the business, a trial court properly attributes business earnings to the sole owner. In re Marriage of Stenshoel, 72 Wn. App. 800, 807, 866 P.2d 635 (1993). Because Goodspeed had 100 percent equity in the company, the court did not err in requiring disclosure of M.A. West Rockies earnings.

[23] RCW 26.19.071(2) provides, "**Verification of income.** Tax returns for the preceding two years and current paystubs shall be provided to verify income and deductions. Other sufficient verification shall be required for income and deductions which do not appear on tax returns or paystubs."

and working as a property manager in Yakima. And though he testified at the first hearing to making between $1,000.00 and $1,200.00 per month managing the property in Yakima, he later testified to receiving only free accommodations for managing the property.

The checking account statements Goodspeed submitted reflecting his deposits from February 2012 through May 2013 show very high deposits for several months, including deposits of $44,222.98 in March 2012 but then show a significant decline in the following months. Goodspeed gave no explanation about the deposits' source except for his note that the large deposits in the first several months reflected repayments and not income. But he did not submit supporting documentation for this assertion. The ALJ found particularly suspicious the 16 money order fees charged on March 6, 2012, "suggesting cash was being converted to money order form." The ALJ found that this evidence supported that Goodspeed was not forthcoming about the bank account statements he submitted to the ALJ reflecting his income.

And at the second administrative hearing, Rodriguez testified that Goodspeed was very good at hiding his assets, that based on her review of his website he had additional businesses or involvement he failed to disclose to the ALJ, and that she believed he made between $5,000 and $7,000 per month. The ALJ found, "Throughout the hearing, Mr. Goodspeed was vague and evasive regarding his interests in various entities and his actual income. He attempted to

paint a dire picture of his finances. Mr. Goodspeed clearly wanted to minimize the amount of his monetary obligation to support his daughter."

We conclude that a fair-minded person could look at the record as a whole and form a reasonable determination that Goodspeed was voluntarily underemployed for the purpose of avoiding his child support obligation.

Goodspeed next asserts that the ALJ arbitrarily interpreted the record. However, based on our review of the record the ALJ made several findings of fact adequately supporting her conclusions and thus based her order on honest due consideration.[24] The ALJ did not make an arbitrary or capricious decision.

Goodspeed also suggests that the ALJ erroneously applied the law. RCW 26.19.071(6) provides that where the record does not reflect a parent's actual earnings, income shall be imputed in the following order, depending on availability of information: full-time earnings at the current rate of pay, full-time earnings at a historical rate of pay based on reliable information, full-time earnings at a past rate of pay if information is incomplete, full-time earnings at minimum wage in the parent's jurisdiction if the parent has a history of minimum wage earnings or receipt of government benefits, and median net monthly income of year-round full-time workers. Here, the ALJ went through each necessary step required by the statute. She concluded that the record contained no reliable information to determine Goodspeed's earnings at a full-time current rate of pay, at a historical rate of pay such as employment security data, or at a

_____

[24] See Stewart, 162 Wn. App. at 273.

past rate of pay where income is incomplete or sporadic, and he had no history of earning minimum wage or receiving state benefits.[25] The ALJ then based her conclusion on the facts in the record. Thus, the ALJ did not erroneously apply the law when she imputed income to Goodspeed.

Goodspeed next contends that DSHS improperly advocated for a particular outcome at the administrative hearing. The superior court concluded that the State "[c]learly . . . advocated for a particular outcome" below but that the State's positions did not "chang[e] this Court's analysis in its decision." The State "does not act on behalf or as an agent or representative of an individual" at administrative hearings under RCW 74.20.057(4). DSHS may, however, "[m]ake independent recommendations to ensure the integrity and proper application of the law and process."[26] While the record shows that the State advocated for a particular outcome below, a reasonable person could find that it was merely acting within its authority to make recommendations to ensure the proper application of the process to this case, rather than acting on behalf of Rodriguez. Further, where Goodspeed had the burden to prove that the ALJ's order was in error and the record supports that the ALJ based her order on the incomplete and inconsistent evidence that Goodspeed provided, he cannot show that the State's involvement prejudiced him.[27]

---

[25] See RCW 26.19.071(6).
[26] RCW 74.20.057(4).
[27] See RCW 34.05.570.

Finally, Goodspeed argues he should be awarded "fees and costs associated with bringing this Appeal as permitted by the statu[t]e." This court may award fees and expenses to a prevailing party on appeal under RAP 18.1. Because Goodspeed does not prevail on appeal, we deny his request.

Conclusion

A fair-minded person could have ruled as the ALJ did after reviewing the record. The record does not show that the ALJ made an arbitrary and capricious decision because she relied on the evidence in making her findings and decision. And Goodspeed cannot show that the State's involvement in the administrative hearing prejudiced him, nor can he show that the ALJ erroneously applied the law. And because Goodspeed does not prevail, we deny his request for fees. We affirm the superior court.

_Leach, J._

WE CONCUR:

_Spearman, C.J._                _Dwyer, J._