# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Marriage of: | No. 57903-1-II |
| RAVIN RACQUEL ANDREWS, | |
| Appellant, | |
| and | |
| NICKOLAS JERMAINE ANDREWS, | UNPUBLISHED OPINION |
| Respondent. | |

LEE, J. — Ravin R. Andrews appeals the final orders entered in the dissolution of her marriage to Nickolas J. Andrews. Ravin[1] argues the trial court erred by failing to impose restrictions in the parenting plan despite finding Nickolas committed domestic violence. Ravin also argues that the trial court erred by finding she had a problem that interfered with her parenting abilities. Ravin further argues that the trial court unjustly and inequitably divided assets and debts.[2]

---

[1] We use the parties' first names in this opinion for clarity. We mean no disrespect.

[2] In her amended notice of appeal, Ravin designates the "Order Denying Reconsideration" as one of the decisions this court should review. Clerk's Papers (CP) at 304. However, Ravin does not make assignments of error or arguments specific to her motion for reconsideration in her opening brief and we hold that the trial court did not err; thus, we do not address the trial court's denial of her motion for reconsideration. RAP 10.3(a)(6); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992); *see also Christian v. Tohmeh*, 191 Wn. App. 709, 727-29, 366 P.3d 16 (2015) (declining to address appellant's "assign[ment of] error to the denial of the motion for reconsideration" where appellant "did not adequately brief the law attendant to the assignment"), *review denied*, 185 Wn.2d 1035 (2016).

We hold that the trial court's finding relating to Nickolas' domestic violence and RCW 26.09.191(1) and (2)(a) restrictions are ambiguous and insufficient for us to review. We also hold that substantial evidence does not support the trial court's finding that Ravin has a "long-term emotional or physical problem" that interferes with her parenting abilities. We further hold that the trial court did not abuse its discretion in its division of property. Therefore, we affirm the trial court's division of property, reverse the trial court's finding that Ravin has a "long-term emotional or physical problem" that interferes with her parenting abilities, and remand for the trial court to clarify its finding regarding Nickolas' domestic violence and RCW 26.09.191 restrictions.

FACTS

Ravin and Nickolas were married on February 14, 2009. The couple separated in September 2020, and Ravin filed a petition for divorce in October 2020. Ravin and Nickolas have three minor children.

Prior to trial, Nickolas requested that a Guardian ad Litem (GAL) be appointed for the children. The GAL was ordered to investigate Nickolas's domestic violence, Ravin's detrimental environment, and the parenting abilities of both parents. The case proceeded to trial on January 10, 2023.

A. EVIDENCE REGARDING NICKOLAS'S DOMESTIC VIOLENCE

Both Ravin, who appeared pro se, and Nickolas testified. During Ravin's cross-examination, Nickolas' counsel offered, and the trial court admitted, the GAL's report into evidence.

The GAL's report stated that the GAL interviewed both Ravin and Nickolas. Nickolas admitted during his interview to multiple instances of domestic violence. Nickolas told the GAL

that when he and Ravin were in college, he hit her in the face. In 2010, Nickolas again hit Ravin in the face, though he told the GAL it was an accident this time. In 2020, Nickolas and Ravin got into an argument during which Nickolas grabbed Ravin's arm, pushed her into a dresser, and grabbed her by the neck.

Nickolas acknowledged the domestic violence during his testimony at trial, stating he regretted "the domestic violence that occurred." 2 Verbatim Rep. of Proc. (VRP) (Jan. 11, 2023) at 190. He also acknowledged the frequency of the incidents, stating, "It happened a lot." 2 VRP (Jan. 11, 2023) at 190.

B. EVIDENCE REGARDING RAVIN'S PARENTING

The GAL report also addressed Ravin's parenting abilities. The GAL noted Nickolas' concern that Ravin "does for [the children] what she wants, and doesn't consider their interests or level of engagement that they want." Ex. 124, at 9. The GAL outlined their observations in their report:

> The mother dismissed and failed to respond to the emotional and behavioral presentation of the children. She did this after being asked to respond to the concern that the father expressed, that she doesn't take into account the preferences and needs of others and has a singular focus on her own needs and agenda.
>
> The mother did not address the daughter's presentation of distress even after the mother said the daughter was tired. Instead, she encouraged her son to call out the daughter's behavior in a negative reference. The mother ignored, then invalidated the daughter's fatigue and not wanting to color and told the daughter—you do want to color, you will color.

Ex. 124, at 21-22. The GAL also observed Ravin "put into motion a dynamic in her engagement with the children that was a set up for failure" and provided the example where Ravin "ha[d] cartoons on while telling the kids to study." Ex. 124, at 22. This example showed how Ravin

would impose "an expectation [on the children], and not adjust[] the environment to be conducive to meeting the expectation." Ex. 124, at 22.

Based on the investigation, the GAL concluded that Ravin's dynamic with the children "risks confusion, resentment and depression for the children." Ex. 124, at 22. The GAL recommended Ravin enroll in a Triple P Parenting class to help Ravin "learn parenting skills that help [her] validate and respond to the behaviors presented by her children." Ex. 124, at 26.

C.      PROPERTY

At trial, Ravin testified that the two main assets before the court were the family home and a timeshare. Ravin asked that she be awarded the family home and proposed that Nickolas take the timeshare. Ravin also proposed that she take on all marital credit card debt. Based on Ravin's calculation of debts, and her valuation of the family home, accounting for the outstanding mortgage, post-separation improvements, and selling costs, Ravin argued she owed Nickolas $13,000 in equity. Nickolas asked that Ravin refinance the home and pay him his share of equity in the home, or, if she could not refinance, sell the home.

D.      TRIAL COURT DECISION

1.      Oral Ruling

Following trial, the trial court reviewed a proposed final parenting plan on the record. In addressing the proposed parenting plan, the trial court stated, "neither parent has any [RCW 26.09.191] issues." 3 VRP (Jan. 12, 2023) at 298. Later, however, in discussing problems that may harm the children's best interests, the court found that "Mr. Andrews has a history of domestic violence" and that Ravin "has an emotional physical problem that gets in the way of her ability to parent." 3 VRP (Jan. 12, 2023) at 298. In terms of restrictions, the trial court accepted the language

4

that Nickolas had been "treated for DV as recommended in his evaluation" and ordered Nickolas to provide his treatment discharge paperwork to the court and Ravin. Clerk's Papers (CP) at 223. The trial court also ordered Ravin to complete a parenting class, explaining that if she did not, Nickolas could move to modify the parenting plan.

2.       Written Orders

Following the trial court's oral review of the proposed parenting plan, the trial court held a hearing to have final orders presented and to clarify any confusion regarding the drafting of those orders. During the presentation hearing, Ravin asked the court whether she would receive credit for the post-separation mortgage payments she allegedly made on the family home. The trial court replied that "to the extent" the court's division of assets and debts "does not give you dollar-for-dollar reimbursement," she would not be reimbursed. 4 VRP (Jan. 20, 2023) at 324.

The trial court then entered written orders. The trial court awarded Ravin the home and timeshare, and Nickolas was awarded a $220,000 judgment. The trial court ordered that Ravin and Nickolas share the tax exemption for their children on their tax returns by each claiming the exemption in alternating years.

The written parenting plan stated that neither parent had problems with abandonment, neglect, child abuse, domestic violence, assault, or sex offenses. Rather, the parenting plan stated that Ravin and Nickolas had "[o]ther problems" that might harm their children's best interests under RCW 26.09.191. CP at 222. The parenting plan stated that Ravin "has a long-term emotional or physical problem that gets in the way of his/her ability to parent." CP at 222. The parenting plan also stated that Nickolas "has committed domestic violence." CP at 223. The trial court did not impose any parenting restrictions based on these findings. The reason given for not

imposing parenting restrictions on Nickolas was that he "has been treated for DV as recommended in his evaluation." CP at 223. With regard to Ravin, the trial court stated that Ravin "shall not have limitations of her time with the children presently, but must engage in treatment." CP at 223.

The only relevant difference between the trial court's oral ruling and its written parenting plan was in the findings regarding Nickolas's domestic violence: rather than finding a history of domestic violence, the trial court wrote that Nickolas "has committed domestic violence. He has been treated for this issue." CP at 223.

The parenting plan also required joint decision-making regarding the children's education, non-emergency healthcare, and extracurricular activities. Additionally, the trial court ordered the parties to arbitrate before bringing any future parenting disputes to the court.

E.      MOTION FOR RECONSIDERATION

Ravin moved for reconsideration of the trial court's parenting plan and property distribution. While Ravin appeared pro se at trial, she retained counsel to argue for reconsideration. Ravin argued that she was entitled to credit for the post-separation mortgage payments she allegedly made on the family home and that the trial court was required to impose restrictions in the parenting plan based on the court's finding of domestic violence.

During the hearing on Ravin's reconsideration motion, the trial court asked Ravin's counsel whether the trial court had to make a domestic violence finding despite Nickolas having completed domestic violence treatment. Ravin's counsel responded that, per the statute, the court was required to limit decision-making and dispute resolution based on Nickolas's history of domestic violence. The trial court stated that, based on its observations during the trial and the presentation hearing, Ravin was unlikely to cooperate with Nickolas, meaning prohibiting joint decision-

making would cause "chaos for these kids." 5 VRP (Feb. 10, 2023) at 389. Ravin's counsel responded that Ravin's behavior was not the catalyst for parenting restrictions under the statute—Nickolas's domestic violence history was. The trial court then asked whether prohibiting joint decision-making was in the best interests of the children, and Ravin's counsel responded that he could not speak to the best interests of the children, but that the prohibition was statutorily required.

The trial court denied Ravin's motion for reconsideration.

Ravin appeals.

## ANALYSIS

### A.    PARENTING PLAN

Ravin argues the trial court erred by failing to impose restrictions in the parenting plan pursuant to RCW 26.09.191(1) and (2)(a). Ravin also argues that substantial evidence does not support the trial court's finding that she "has a long-term emotional or physical impairment that interferes with the performance of parenting functions." Br. of Appellant at 17.

#### 1.    Legal Principles

A trial court's discretion to fashion parenting plans is broad. *In re Marriage of Mishko*, 23 Wn. App. 2d 571, 577, 519 P.3d 240 (2022). We review parenting plans for an abuse of discretion. *Id*. The trial court abuses its discretion if its parenting plan is manifestly unreasonable or based on untenable grounds or reasons. *Id*. An untenable decision is one that "'is based on an incorrect standard or the facts do not meet the requirements of the correct standard.'" *Id.* (quoting *In re Marriage of Littlefield*, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997)).

The Parenting Act of 1987 guides the trial court's fashioning of parenting plans. *See Marriage of Katare*, 175 Wn.2d 23, 35-36, 283 P.3d 546 (2012) (collecting statutory provisions),

7

*cert. denied*, 568 U.S. 1090 (2013). Relevant here, RCW 26.09.191 allows the trial court to restrict the parenting plan's terms if it finds that a parent has "a history of acts of domestic violence." RCW 26.09.191(1)(c), (2)(a)(iii).

"The trial court's findings of fact will be accepted as verities by the reviewing court so long as they are supported by substantial evidence. Substantial evidence is that which is sufficient to persuade a fair-minded person of the truth of the matter asserted." *Katare*, 175 Wn.2d at 35 (citation omitted).

A trial court's findings of fact must be sufficiently specific to allow for meaningful review. *In re Dependency of A.D.*, 193 Wn. App. 445, 462, 376 P.3d 1140 (2016). If the trial court's findings are not sufficiently specific to allow for review, remand to the trial court is necessary. *Id*. at 462-63.

2.      Domestic Violence—RCW 26.09.191(1) and (2)(a)

RCW 26.09.191 concerns restrictions and limitations in parenting plans—some are required upon certain findings, while others are discretionary. A finding of a history of acts of domestic violence has ramifications under at least two subsections of RCW 26.09.191. Under subsection (1), a "permanent parenting plan shall not require mutual decision-making or designation of a dispute resolution process other than court action if it is found that a parent has engaged in . . . a history of acts of domestic violence."[3] RCW 26.09.191(1)(c). Under subsection

---

[3] Relevant here, "domestic violence" means any of the following when committed by one family or household member against another family or household member: "Physical harm, bodily injury, assault, or the infliction of fear of physical harm, bodily injury, or assault; nonconsensual sexual conduct or nonconsensual sexual penetration; coercive control; unlawful harassment; or stalking." RCW 7.105.010(9)(a), (b).

(2)(a), a finding of a history of acts of domestic violence requires the court to limit the parent's residential time under the parenting plan. RCW 26.09.191(2)(a)(iii).

Ravin cites to the trial court's oral ruling—"'I'm going to find that Mr. Andrews has a history of domestic violence'"—to argue that the trial court should have imposed RCW 26.09.191(1) and (2)(a)'s limitations on Nickolas. Br. of Appellant at 13 (quoting 3 VRP (Jan. 12, 2023) at 298).

Limitations on parenting under RCW 26.09.191(1) and (2) are imposed upon a finding that the parent has engaged in "a history of acts of domestic violence." Here, the trial court, in its oral ruling, expressly stated, "Mr. Andrews has a history of domestic violence." 3 VRP (Jan. 12, 2023) at 298. Substantial evidence supports such a finding. However, the trial court did not impose any RCW 26.09.191 restrictions. Subsequently, in its written finding, the trial court merely stated that Nickolas "has committed domestic violence" and, consistent with its oral ruling, did not impose any RCW 26.09.191 restrictions. CP at 223. Based on the record before us, the trial court's finding regarding Nickolas' domestic violence is ambiguous and insufficient for us to conduct a meaningful review. Accordingly, we remand to the trial court to clarify its finding regarding Nickolas' domestic violence based on RCW 26.09.191(1) and RCW 26.09.191(2)(a).

3.      Long-Term Emotional or Physical Impairment—RCW 26.09.191(3)(b)

Domestic violence is not the only finding that might result in limitations on a parenting plan. Under RCW 26.09.191(3), "the court may preclude or limit any provisions of the parenting plan, if any of the following factors exist: . . . (b) A long-term emotional or physical impairment which interferes with the parent's performance of parenting functions." *See also Littlefield*, 133 Wn.2d at 54-55. Before the trial court applies subsection (3), however, it must find that the

parent's actions may adversely affect the child's best interests. *Katare*, 175 Wn.2d at 36; *In re Marriage of Watson*, 132 Wn. App. 222, 232, 130 P.3d 915 (2006).

The trial court found that Ravin "has a long-term emotional or physical problem that gets in the way of . . . her ability to parent" that "may harm the children's best interests." CP at 222. Ravin argues that substantial evidence does not support the trial court's finding that she "has a long-term emotional or physical impairment that interferes with the performance of parenting functions." Br. of Appellant at 17. We agree.

Here, the record is devoid of any evidence that shows Ravin has a "long-term emotional or physical impairment" that interferes with her parenting abilities. At most, the GAL's report, prepared after a single visit, showed that Ravin "failed to respond to the emotional and behavioral presentation of the children" and "put into motion a dynamic in her engagement with the children that was a set up for failure." Ex. 124, at 21, 22. The GAL's report fails to support the trial court's finding that Ravin has an emotional or physical impairment that impedes her parenting ability. And there is no other evidence in the record to support the trial court's finding. Accordingly, the trial court erred in making an RCW 26.09.191(3) finding against Ravin.[4]

B.    ASSET AND DEBT DISTRIBUTION

Ravin argues that the "trial court abused its discretion and did not make a just and equitable division of the parties' assets and debts." Br. of Appellant at 19. Specifically, she argues that she was entitled to a credit for post-separation mortgage payments she allegedly made on the family

---

[4] Ravin asks that if this court remands her case to the trial court, it be assigned to a new judge because the judge below would be biased against her. Br. of Appellant at 22. As the record does not support Ravin's claim, we decline Ravin's request to have a new judge assigned to this case.

home and that she should be allowed the exclusive right to claim the children on her tax returns. We disagree.

1.    Legal Principles

Under RCW 26.09.080, a trial court presiding over the dissolution of a marriage must make a "just and equitable" division of the parties' assets and debts "after considering all relevant factors." Applicable factors include "[t]he nature and extent of the community property," "[t]he nature and extent of the separate property," "[t]he duration of the marriage," and "[t]he economic circumstances of each spouse . . . at the time the division of property is to become effective." RCW 26.09.080(1)-(4).

This court rarely disturbs the trial court's decision in dissolution actions because "[t]he emotional and financial interests affected by such decisions are best served by finality." *In re Marriage of Landry*, 103 Wn.2d 807, 809, 699 P.2d 214 (1985). Furthermore, "[t]he trial court is in the best position to assess the assets and liabilities of the parties and determine what is 'fair, just and equitable under all the circumstances.'" *In re Marriage of Brewer*, 137 Wn.2d 756, 769, 976 P.2d 102 (1999) (quoting *In re Marriage of Hadley*, 88 Wn.2d 649, 656, 565 P.2d 790 (1977)).

"A property division made during the dissolution of a marriage will be reversed on appeal only if there is a manifest abuse of discretion." *In re Marriage of Muhammad*, 153 Wn.2d 795, 803, 108 P.3d 779 (2005). "'A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons.'" *Id.* (quoting *Littlefield*, 133 Wn.2d at 46-47). As the court in *Littlefield* explained:

A court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard; it is based on untenable grounds if the factual findings are unsupported by the record; it is based on

untenable reasons if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard.

*Littlefield*, 133 Wn.2d at 47.

> 2. Mortgage Payments

Here, Ravin argues that she is entitled to a credit for the post-separation mortgage payments she allegedly made on the family home. However, Ravin provides no legal authority that the trial court had an obligation to award Ravin a specific credit for post-separation mortgage payments. *See DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none."). Moreover, the trial court had before it evidence of the parties' assets and debts, and Ravin fails to show that the trial court failed to take into account evidence of post-separation mortgage payments in making its property distribution. Based on the record before us, the trial court did not abuse its discretion.

> 3. Tax Exemptions

Ravin also argues that the trial court abused its discretion by ordering that she and Nickolas alternate claiming tax exemptions for the children each year. In support of her argument, Ravin cites *In re Marriage of Peterson*, 80 Wn. App. 148, 906 P.2d 1009 (1995), *review denied*, 129 Wn.2d 1014 (1996).

In *Peterson*, a husband and wife separated, and the trial court approved a parenting plan awarding the husband the income tax exemptions for his children. *Id*. at 150. When the trial court entered a dissolution decree, it again awarded the husband the tax exemptions. *Id*. Years later, the wife moved to modify a child support order. *Id*. As part of its modified order, the trial court

awarded the wife the tax exemptions, and denied the husband's motion to reconsider that decision, stating it "had authority to transfer an exemption award because it related to child support." *Id*. at 152. On appeal, the husband argued "that the trial court lacked authority to modify the tax exemption award." *Id*. at 155. The court rejected that argument, explaining that "tax exemptions for dependent children are generally considered to be an element of child support" because "a child's best interests are served when the financial situations of the parents are maximized.*" Id.* at 156. The court continued: "To ensure that an exemption is used efficiently as tax laws, income levels, and child support obligations change, the trial court must retain the authority to allocate exemptions to the party who will benefit most from them." *Id.*

Ravin argues that the trial court erred because, pursuant to *Peterson*, the trial court was required to consider, on the record, the "household resources of the parties and how benefit of the tax exemptions impact resources available for the children in each party's home." Br. of Appellant at 21. Ravin is wrong—*Peterson* did not hold that a trial court must make such inquires on the record before awarding tax exemptions to one parent or the other; rather, Peterson held that the trial court had the *authority* to make such an award. *Peterson*, 80 Wn. App. at 156.

Finally, Ravin's argument that she is entitled to the tax exemptions because she "provides a majority of the care for the children and shoulders the associated expenses" is unsupported by citations to the record, and need not be addressed by this court. Br. of Appellant at 21; RAP 10.3(a)(6); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). Accordingly, Ravin fails to show that the trial court abused its discretion by not crediting her for post-separation mortgage payments she allegedly made or by ordering that tax exemptions alternate between Ravin and Nickolas each year, and we affirm the trial court's property division.

C.    ATTORNEY FEES ON APPEAL

In the last sentence of his conclusion, Nickolas asks this court to "grant him attorney fees." Br. of Resp't at 22. However, Nickolas did not comply with RAP 18.1(b), which requires parties to dedicate a section of their opening brief to their request for fees, and to identify the source entitling them to fees. *See Hurley v. Port Blakely Tree Farms LP*, 182 Wn. App. 753, 774, 332 P.3d 469 (2014) ("RAP 18.1(b) requires 'more than a bald request for fees.'" (quoting *Richards v. City of Pullman*, 134 Wn. App. 876, 884, 142 P.3d 1121 (2006))), *review denied*, 182 Wn.2d 1008 (2015). Because Nickolas did not dedicate a section of his brief to his request nor did he identify a source entitling him to fees, we decline to award Nickolas attorney fees on appeal.

CONCLUSION

Because the trial court's finding with regard to Nickolas' domestic violence and RCW RCW 26.09.191 restrictions is insufficient to allow for meaningful review, we remand to the trial court to clarify its finding. We also reverse the trial court's finding that Ravin has a "long-term emotional or physical impairment which interferes" with her parenting abilities. And, because Ravin failed to prove the trial court abused its discretion in its disposition of the parties' assets and debts, we affirm the trial court's property distribution. Finally, we decline to award Nickolas fees on appeal.

No. 57903-1-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Cruser, C.J.

Price, J.