IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| IN RE THE MARRIAGE OF: | ) | |
| DEBRA R. GORE, | ) | No. 30831-6-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | |
| | ) | UNPUBLISHED OPINION |
| JOHN E. JONES, | ) | |
| | ) | |
| Appellant. | ) | |

KORSMO, C. J. — This appeal from a support modification hearing primarily presents the question of whether the parties' respective incomes were correctly calculated for purposes of setting child support. We reject appellant's arguments and affirm.

FACTS

Few facts are necessary to the resolution of this appeal and, where necessary, they generally are discussed in the course of our analysis. The parties are both physicians practicing in Spokane. Respondent Debra Gore is a family practitioner employed by Group Health. Appellant John Jones is an emergency room physician who works under contract at both Deaconess Hospital in Spokane and at the Colville Medical Center.

The couple has three children, including a pair of twins, who reside with Dr. Gore. Child support for Dr. Jones initially was set at $1,152.12 per month. When the twins reached the age of 12, Dr. Gore moved to modify the existing payment on the basis of the

two older children moving to a higher category in the support tables. Dr. Jones argued

that changed financial circumstances supported a recalculation of the respective

obligations of the parents.

The matter was heard by a Spokane County Superior Court commissioner. No

live testimony was taken, but the court considered declarations from the parties and heard

argument from counsel. After deductions, the court found Dr. Jones's monthly income to

be $16,037 and Dr. Gore's monthly income to be $9,031. On the basis of these

respective income levels, Dr. Jones was ordered to pay a total of $2,208 per month.

Dr. Jones's motion to reconsider was denied and his motion to revise the

commissioner's ruling was rejected as untimely. He then timely appealed to this court.

## ANALYSIS

The appeal presents several challenges to the process used by the commissioner to

calculate the parties' respective incomes. The basic issues stem from the fact that while

Dr. Gore is a salaried employee, Dr. Jones is self-employed and therefore different

methodologies apply to the calculation of their respective monthly income levels. We

will consider the challenges to the computation of Dr. Gore's income before considering

the arguments relating to Dr. Jones's income.

The standards governing our review of these matters are well settled. This court

reviews child support orders for an abuse of discretion. *In re Marriage of Griffin*, 114

Wn.2d 772, 776, 791 P.2d 519 (1990). Discretion is abused when it is exercised on

2

untenable grounds or for untenable reasons. *In re Marriage of Littlefield*, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997). Substantial evidence must support the trial court's factual findings. *In re Parentage of Goude*, 152 Wn. App. 784, 790, 219 P.3d 717 (2009). This court will not substitute its judgment for trial court judgments if the record shows the court considered all relevant factors and the award is not unreasonable under the circumstances. *Griffin*, 114 Wn.2d at 776.

Generally, a trial court may modify a child support order "only upon a showing of a substantial change of circumstances." RCW 26.09.170(1)(b). However, an order of child support may be modified one year or more after it has been entered without a showing of substantially changed circumstances "if a party requests an adjustment in an order for child support which was based on guidelines which determined the amount of support according to the child's age, and the child is no longer in the age category on which the current support amount was based." RCW 26.09.170(6)(b).

Before modifying child support payments, the trial court must consider "all factors bearing upon the needs of the children and the parents' ability to pay." *In re Marriage of Pollard*, 99 Wn. App. 48, 52, 991 P.2d 1201 (2000). "[T]he trial court applies the uniform child support schedule, basing the support obligation on the combined monthly incomes of both parents." *Id.* (citing RCW 26.19.020, .035(1)(c), .071(1)).

### Dr. Gore

Dr. Jones argues that the commissioner erred by not considering the cost of employer-paid benefits as part of Dr. Gore's income and also by not imputing additional income to her based on her hours of work. Those complaints will be addressed in the order stated.

*Benefits.* Dr. Jones argues that Dr. Gore's annual income should reflect $40,000 worth of employer-paid benefits, primarily consisting of the employer's contribution toward her health care coverage and to her deferred compensation program. He contends that the statute mandates attribution of the cost of these benefits as income to Dr. Gore. We disagree.

At issue is RCW 26.19.071(3), which provides in relevant part:

> (3) **Income sources included in gross monthly income.** Except as specifically excluded in subsection (4) of this section, monthly gross income shall include *income from any source*, including:
> (a) Salaries;
> (b) Wages;
> . . . .
> (d) Deferred compensation;
> . . . .
> (f) Contract-related benefits

(Emphasis added.)

Dr. Jones alleges both that the statute defines contributions to the deferred compensation plan as income and that the employer's costs of benefits are "contract-related benefits." His arguments misread the statute. As noted above, subsection (3)

4

defines "gross income" as "income from any source, including" deferred compensation. Key to this definition is the word "income." Only "income" from deferred compensation or from the contract-related benefits is to be considered. A contribution to a deferred compensation program is not income as it results in no immediate payment to the employee. Indeed, considering the employer's contribution as income would result in a double counting—the contribution would be "income" when it was made by the employer and would also be "income" again when the employee receives payment in the future.

Dr. Jones also cites no relevant authority that suggests that the costs of an employer's contributions to an employee's benefits are "income" to the employee. While the legislature is free to direct that some measure of benefit expenditure or receipt be included in evaluating a support obligation, it has not done so except to the extent that the benefit constitutes *income* to the employee. It is understandable why. Payments toward the costs of a future benefit present no liquid asset that the parent could currently use toward a support obligation, which, of course, is the purpose of this statutory exercise. Measuring the value of a benefit also could be very difficult. The value of a benefit to the employee may be far greater (or lower) than the cost of the benefit to the employer. For instance, many group plans require an employer to make contributions on a per employee basis regardless of whether the employee uses the benefit or not. A family may have overlapping benefits available from different employers and only use the benefit

5

that is most appropriate to them. Should the cost of the unused benefit be attributed as "income" to the employee even though it is of no true value to the employee? What if, instead, Group Health provided a far better health benefit than Dr. Gore and her children needed or desired? Would the court be required to attribute the benefit at the level of its value to her or at its value to someone else?

Accepting Dr. Jones's argument here would have consequences across a wide variety of fact patterns that are best addressed by the legislature. Fundamentally, this case is resolved solely on the basis of the plain language of the statute. The statute does not define "income," but does explain various sources of income that either must be considered (RCW 26.19.071(3)) or not considered (RCW 26.19.071(4)). All of the listed sources reference cash-type payments to the recipient or the equivalent of cash such as food stamps.

These listings all suggest the typical definitions of "income" found in the dictionary. Those include (1) "a gain or recurrent benefit that is usu. measured in money" or (2) the "value of goods and services received." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY at 1143.

We do not believe payments made by an employer to purchase a benefit are "income" to the employee. While not exclusive, the income sources listed in RCW 26.19.071(3) for consideration by the trial court are typically sources of cash payments to the recipient such as dividends, interest, and unemployment compensation. The

6

legislature could easily have included common benefits such as health insurance if it desired that they be included as "income." Instead, the legislature seemed more interested in capturing value received from active and passive sources rather than valuing benefits received. In this manner, it parallels the United States tax code in its broad definition of income. 26 U.S.C. § 61. However, despite the broad definition, the federal tax code excludes health insurance from the definition of "income." 26 U.S.C. § 106(a). Nothing in our statute indicates that Washington intends to treat employer-provided benefits differently than the federal government has done.

The legislature has not defined employer-paid benefits as income, nor has it provided any measure for valuing such benefits. As currently written, this aspect of our child support schedules does not treat the employer's cost of health insurance as income to the employee parent. Instead, it simply treats cash-type income received from the various listed sources as income available for child support. The trial court correctly did not attribute Group Health's payments toward benefits as income to Dr. Gore.[1]

*Imputed Income.* Dr. Jones makes parallel arguments that the trial court erred by not imputing additional income to Dr. Gore and by treating his hours of work as similar

---

[1] Since the W-2 wages (box 1) for Dr. Gore are higher than her base salary, it would appear that some employer benefits were treated as income for federal reporting purposes. The W-2 wages were used both for her income tax return and to compute her monthly child support obligation.

7

to hers for purposes of this statute. We find no abuse of discretion in treating the couple

in the manner in which they have always worked.

The trial court found that Dr. Gore was employed at 0.7 full-time employee (FTE)

with a typical work week of 31 hours. She had been employed at 0.6 FTE at the time of

the dissolution. The trial court also found that Dr. Jones worked far less hours per week

than Dr. Gore, noting that he had only worked 86 hours (20.5 per week) in January 2012.

The court concluded that neither party was employed full-time and that it was not

appropriate to impute income to either side.

RCW 26.19.071 states in relevant part:

> (6) **Imputation of Income.** The court shall impute income to the
> parent when the parent is voluntarily unemployed or voluntarily
> underemployed. The court shall determine whether the parent is
> voluntarily underemployed or voluntarily unemployed based upon that
> parent's work history, education, health, and age, or any other relevant
> factors. A court shall not impute income to a parent who is employed on a
> full-time basis.

"Voluntary underemployment" has not been defined in Washington, but we

believe that it should be treated similarly to voluntary unemployment that has been

defined as "unemployment that is brought about by one's own free choice and is

intentional rather than accidental." *In re Marriage of Brockopp*, 78 Wn. App. 441, 446

n.5, 898 P.2d 849 (1995). A court's decision on imputation of income due to voluntary

underemployment is reviewed for abuse of discretion. *In re Marriage of Wright*, 78 Wn.

App. 230, 234, 896 P.2d 735 (1995).

8

The court did not impute income to either party. Thus, the refusal to consider Dr. Jones as a full-time worker is irrelevant to the determination of his income level and is only of consequence because it was a factor the court considered in refusing to impute additional income to Dr. Gore. We believe that the court properly considered the work history of the parties in its decision.

At the time of the dissolution, Dr. Gore worked as a 0.6 FTE, and had increased that to .07 FTE at the time of the modification hearing. Dr. Jones worked somewhere in the vicinity of 20 to 25 hours per week. No evidence was presented that showed what full-time hours would be for Dr. Gore in her family practice field or that Group Health was willing to extend her to full-time. Dr. Jones provided a survey that suggested full-time for his specialty was considered 30 to 35 hours. However, he never showed that he worked that many hours or that his time in Colville should be treated the same as his time in Spokane for this purpose.

On the whole, the record showed that the parties continued to earn in roughly the same proportion that they had while married. Since neither appeared to be employed full-time within the meaning of their respective specialties, the commissioner could—as she did—consider their practice hours a "wash." Both were highly paid professionals who might have been able to work more, but there was no significant variance from their longstanding customary practices in terms of hours of employment or total income. Instead, they were roughly maintaining their predissolution status quo.

9

The court had tenable reasons to decline to impute "full-time" wages to either party. There was no abuse of discretion.

The trial court did not err in its calculation of Dr. Gore's monthly income for purposes of the child support schedules.

### Dr. Jones

Dr. Jones also argues that the court erred in two respects with regard to its calculation of his income. First, he contends the court erred in treating a pay stub as evincing only 11 months of employment rather than 12 months. Second, he argues that the court should have granted more business expense deductions from his income than it did. Again, we will address these arguments in turn.

*Monthly Income.* This issue turns upon the meaning of a pay stub. That document, labeled "Printable Pay Stub" indicates that it is for the pay period ending November 30, 2011. Clerk's Papers (CP) at 230. The pay period is not further defined in the document, but the parties and the court treated the document as if it was a payment for the entire month of November 2011. The pay stub lists the total gross earnings for "Year to Date" as $246,430.[2] The trial court divided this figure by 11 to establish Dr. Jones's monthly income at $22,403. Dr. Jones moved to reconsider on the basis that the

---

[2] The pay stub indicates that it is solely for work done that year at Deaconess Medical Center and does not reflect any payment for work done in Colville. No document establishes Dr. Jones's income from his employment at Colville.

pay stub actually reflected a 12-month period from December 2010 through November 2011 in accordance with a hand printed notation on the top of the stub, which would have resulted in monthly income of $20,535.83. The court denied reconsideration without comment.

Dr. Jones repeats his reconsideration argument here, contending that the trial court clearly erred by not treating this pay stub as reflecting a 12-month period in accordance with the handwritten notation. We disagree. The typical meaning of "year to date" is the calendar year, i.e., from January 1 to the present date. If Dr. Jones used a different year for business and tax purposes, he was quite free to establish that fact via his declaration or information from his accounting department and/or his tax forms. He did not present any such information other than the handwritten notation of unknown origin.

Under the circumstances, we think the trial court understandably did not credit the information. More critically, this court is not in a position to find facts or substitute its judgment of the meaning of the evidence for that of the trier of fact. *Quinn v. Cherry Lane Auto Plaza, Inc.*, 153 Wn. App. 710, 717, 225 P.3d 266 (2009). We also have no authority to make the trial court believe evidence it chose not to believe in the first instance. *Id.*

The trial court did not err by giving "year to date" its common meaning.

*Business Deductions.* Dr. Jones also argues that the trial court erred by not deducting all of his claimed business expenses when it established his monthly income

11

for support purposes. We conclude that the trial court acted within its authority in only partially accepting the claimed expenses.

Dr. Jones claimed monthly business expenses of $969.75 related to his work in Spokane[3] and an additional $287.00 related solely to his work in Colville.[4] In his child support worksheet filed the same day, he claimed business expenses of only $711.00 The trial court noted that before becoming self-employed, Dr. Jones claimed monthly business expenses of only $590.00 Since some of the requested expenses also would reduce his tax obligations, the court indicated it would only allow $800.00 for business expenses in the absence of a tax return. To do otherwise would effectively allow double counting of the expenses.

Given the varying requests, we do not believe the trial court erred in allotting $800.00 for the requested business expense deductions. The trial court was not required to accept the largest request if it was not satisfied with the proof. *Id.* That appears to be the situation here. While the current year's tax return may have provided more information that would have clarified the request, that information was not then available

---

[3] These expenses also reflected his professional licensing requirements that would have application across both jobs.

[4] Without having income from Colville to off-set, we question whether it would have been appropriate to consider these claimed expenses.

12

No. 30831-6-III
Marriage of Gore & Jones

to the court or the parties. Accordingly, we cannot say that the trial court erred in its assessment of deductible business expenses.[5]

Dr. Jones has not established that the trial court erred in determining his monthly income for child support purposes.

The judgment is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, C.J.

WE CONCUR:

_____
Brown, J.

_____
Kulik, J.

_____

[5] Given the high earnings by the parties, it is unlikely that the deductions would have altered the ration of their respective contributions to the child support.

13