# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Marriage of )  No. 77238-4-I
)
CHRIS AZUKA ONOCHIE, )
)
        Appellant, )
) DIVISION ONE
        and )
)
EREKPOEBINIMI ANITA ONOCHIE, ) UNPUBLISHED OPINION
)
        Respondent. ) FILED: November 19, 2018
)

MANN, J. — Chris Onochie appeals the trial court orders dissolving his marriage to Ereks Onochie[1], the parenting plan, child and spousal support, and protection order. Chris makes fifteen assignments of error. We affirm.

## I.

Ereks and Chris Onochie were married on July 6, 2002, in Port Harcourt, Nigeria. The parties have six children together. The family moved to Seattle, Washington in 2013. Ereks alleged that during their marriage, there were numerous incidents of domestic violence between the couple.

---

[1] Erekpoebinimi A. Onochie has changed her name to Ereks Ezekiel-Appah. In order to avoid confusion, we refer to the parties by their first names. We mean no disrespect.

Chris petitioned for legal separation on April 21, 2016. At the same time he also filed for a restraining order and was denied. Ereks filed for a temporary protection order for herself and her children on May 13, 2016, which was granted. The order was renewed multiple times and was extended to the trial date.

At trial, Chris appeared pro se. Chris attempted to discredit Ereks's claims of manipulation and violence. At multiple points during the four-day trial, the trial court attempted to redirect Chris's presentation of evidence to the relevant issues before it and Chris's desired outcome from the dissolution proceeding. The court indicated it was not very "interested in what happened 14 years ago" and was "far less interested in what happened . . . in Nigeria other than as it relates to the issues that [the court has] to decide, which have to do with [Chris's] financial status, both parties' financial status, and the best interests of the children." When Chris attempted to discredit Ereks's allegations of abuse from 2002 and 2004, the trial judge stated "you can talk about a lot of things that aren't really pertinent to the issues that this proceeding is about. So just because they've been talked about in the past doesn't mean you have to talk about them here."

The trial court heard testimony from Ereks and Chris, Deborah Hunter, the social worker who wrote the parenting plan, Larkspur Van Stone, the social worker who conducted the domestic violence assessment, Teena Essang-Ekpo, Ereks's sister, Esseme Essang-Ekpo, Ereks's brother-in-law, and a woman who professionally supervised Chris's visits with his children.[2]

---

[2] The report of proceedings does not contain the full testimony of any of these witnesses. Instead, the report is comprised of short excerpted sections of testimony.

2

On July 10, 2017, the trial court entered a decree of dissolution.[3] The court also entered a parenting plan and child support order, imputing income to Chris because he was unemployed at the time of trial. The court also entered a one-year domestic violence protection order.

Chris appeals all orders entered.

## II.

### A.

The law does not distinguish between litigants who elect to proceed pro se and those who seek assistance of counsel. In re Marriage of Olson, 69 Wn. App. 621, 626, 850 P.2d 527 (1993). A pro se litigant must comply with applicable procedural rules, and failure to do so may preclude review. Olson, 69 Wn. App. at 626. It is the appellant's burden to provide a record for review that is sufficient to address the issues raised on appeal. RAP 9.2; Stevens County v. Loon Lake Prop. Owners Ass'n, 146 Wn. App. 124, 130, P.3d 846 (2008). Furthermore, this court will not consider arguments that are unsupported by references to the record, or meaningful analysis. State v. Elliott, 114 Wn.2d 6, 15, 785 P.2d 440 (1990) (finding the argument was insufficiently briefed to warrant review); RAP 10.3(a).

Chris provided this court with a limited record for review, which substantially prevents review of his claims. The report of proceedings provided are disjointed and the excerpts are out of context. Some of Chris's assignments of error relate to the sufficiency of the evidence, and the incomplete report of proceedings prevents this court from determining whether the parties presented sufficient evidence. Additionally, Chris

---

[3] Chris had initially filed for an order of separation, but at the end of trial, both parties agreed to a decree of dissolution.

assigns error to credibility determinations made by the finder of fact, which are unreviewable. State v. Camarillo, 115 Wn.2d 60, 71, 794 P.2d 850 (1990) (credibility determinations are for the trier of fact and cannot be reviewed on appeal).

Chris raises several issues for the first time on appeal. The appellate court may refuse to review any claim of error that was not raised below. RAP 2.5(a). The rule provides specific exceptions where the appellate court must review errors raised for the first time on appeal. RAP 2.5(a). Chris does not argue that any of the exceptions are applicable in this appeal. Chris also raises legal arguments for the first time in his reply brief, which this court declines to address. The appellate court may decline to consider arguments raised for the first time in a reply brief. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

The record is inadequate to review assignments of error 2, 6 through 10, and 12. Similarly, assignments of error 1, 3, 4, and 11 were not adequately preserved below. Thus, only assignments 5, 13, 14, and 15 are reviewable.

B.

Chris's fifth assignment of error contends that the trial court abused its discretion by allowing Ereks and her attorney to withdraw exhibits and replace them with doctored exhibits. Chris argues that the court allowed Ereks and her attorney to make changes to exhibit 150 (the temporary child support order) exhibit 157, (Ereks's proposed parenting plan), and exhibit 158, (Ereks's proposed dissolution order). We disagree.

"The standard of review for evidentiary rulings made by the trial court is abuse of discretion." Peralta v. State, 187 Wn.2d 888, 894, 389 P.3d 596 (2017) (citing City of Spokane v. Neff, 152 Wn.2d 85, 91, 93 P.3d 158 (2004)).

Exhibits 157 and 158 were proposed orders. Ereks submitted revised proposed orders and Chris objected to their admission. The court explained that the proposed orders may be modified during the proceeding, but ultimately the court would draft the final order. The court stated:

> What the parties will end up with will be my decision, but that's part of what this process is all about is that each side can tell me what it is you want. And the order of child support, it's her proposal. Now you'll be able to question her about it or you'll be able to present your own proposal.

Later the court accepted Chris's proposed "family law order, parenting plan, financial declaration, child support order, and trial brief." Thus, Chris's argument that exhibits 157 and 158 were doctored is without merit.

Exhibit 150 was not designated in the record. However, the report of proceedings sheds light on Chris's objection. Exhibit 150 was a temporary order for child support entered by the trial court on October 7, 2016, by a court commissioner. Chris attempted to elicit testimony from Ereks that she forged his signature on the document. Ereks answered that she did not sign his name. Chris later argued to the court that it is clear his signature was forged on the document. However, the trial court indicated that she could not tell from the evidence Chris presented that his signature was forged, rather all that was presented was the question to Ereks of whether she "signed it or could identify it, and she could not."

Chris failed to show that the court abused its discretion by allowing the temporary court order for child support to remain in the record.

## C.

Chris's thirteenth assignment of error is that he filed for an order of separation, and the trial court improperly converted the order to a decree of dissolution. This

argument is unsupported by the record. Ereks indicated during preliminary matters that she preferred a dissolution rather than a separation. Chris indicated that for strategic reasons, he preferred a separation. The court explained the difference between a dissolution and separation, and indicated the issue could be revisited after both sides presented their evidence.

Before closing argument, the court revisited the issue and Chris stated that he wanted a "divorce:" "[y]our Honor, I want it to be a divorce, but I want to be the one that moved the motion because I did before, for certain strategic reasons." The court indicated that there would be no motion, the court would simply enter the final order as a dissolution rather than a separation. The court clarified, "[i]s that what you want?" Chris replied "[y]es."

An agreement to change the legal separation petition to a legal dissolution petition provides an adequate basis for a decree of legal separation. In re Marriage of Ferree, 71 Wn. App. 35, 47, 856 P.2d 706 (1993) (indicating that the parties agreement to a decree of legal separation was enforceable because the agreement coupled with the original petition provided an adequate basis for the legal separation).

Since Chris indicated he preferred a "divorce," he cannot argue on appeal that the court improperly entered a decree of dissolution. The trial court did not err when it entered the decree of dissolution.

D.

Chris's fifteenth assignment of error is that the court abused its discretion by imputing an income to him of $4,042.45 per month as part of the child support calculation. We disagree.

This court reviews child support orders for an abuse of discretion. In re Marriage of Pollard, 99 Wn. App. 48, 52, 991 P.2d 1201 (2000). A trial court's discretion is narrowed only by the statutory requirement to use the child support schedule and corresponding worksheet. RCW 26.19.035(3).

A parent may not avoid or reduce his or her child support obligation by refusing to work or by being intentionally underemployed. Lambert v. Lambert, 66 Wn.2d 503, 509-10, 403 P.2d 664 (1965). When a parent is intentionally underemployed or unemployed, the court is required to impute income. RCW 26.19.071(6). The court determines whether a parent is voluntarily underemployed or unemployed based on the "parent's work history, education, health, and age, or any other relevant factors" to determine the level of employment a parent is capable and qualified to perform. RCW 26.19.071(6); In re Marriage of Sacco, 114 Wn.2d 1, 4, 784 P.2d 1266 (1990). Once the court determines that a parent is intentionally underemployed or unemployed, the court determines the amount of income to be imputed. RCW 26.19.071(6).

Chris has failed to meet his burden to establish that the trial court abused its discretion by imputing income to him. It is undisputed that Chris was underemployed at the time of the trial. Chris tendered his resignation letter to the United States Postal Service (USPS) on June 22, 2017, citing the need to "sort out domestic issues that require a long time to deal with." From the record, it does not appear that Chris made any arguments during trial that he was incapable of working.

Chris's income related to his earnings from Uber, LYFT, and Raiser, LLC was calculated using his bank statements from 2016, totaling $9,140.18. The trial court calculated Chris's income from working at USPS using his W-2 for 2016. The W-2

equaled $39,377.40. However, the W-2 was not a designated exhibit for this appeal. Chris's USPS paystubs were included in the record, which show that at the end of 2016, his gross pay was $40,199.37—more than the amount the trial court used in its calculation. Totaling all of Chris's 2016 income, the trial court imputed gross income of $4,042.45 per month. After deductions, Chris's net income was $3,243.77 per month. Chris has failed to demonstrate that the court abused its discretion by imputing his 2016 income.

## E.

Chris's fourteenth assignment of error alleges that "[t]he trial court erred when it hurriedly filed Findings and Conclusions the next day after its preparation, without giving the parties opportunity to view it, and against the court's promise to make its judgment known before it is filed." We disagree.

CR 52(c) provides:

Unless an emergency is shown to exist, or a party has failed to appear at a hearing or trial, the court shall not sign findings of fact or conclusions of law until the defeated party or parties have received 5 days' notice of the time and place of the submission, and have been served with copies of the proposed findings and conclusions. Persons who have failed to appear at a hearing or trial after notice, may, in the discretion of the trial court, be deemed to have waived their right to notice of presentation or previous review of the proposed findings and conclusions.

(Emphasis added). CR 52(c) applies only when one party enters proposed findings and conclusions of law. It is only in those instances that the five-day notice period applies.

The findings and conclusions entered by the trial court were not based on proposed findings and conclusions, thus the five-day notice period did not apply in this case. The trial court's entry was proper.

Chris contends that the trial court stated "and so my hope would be that I could get decisions out to you before my absence so that you have some resolutions." This is not an accurate quote from the record. The trial judge explained to both parties approximately how long it takes to draft a final order, and that after the final order is entered, she generally gives the parties the opportunity to schedule time with the court to explain the final decision, and how she reached her conclusion. The court indicated that appearing in court was not mandatory, and the second option was to send out the final order to the parties. Both parties agreed that the second option was preferable. Chris's argument is without merit.

We affirm.

WE CONCUR:

9