# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| TOMMY DARREN TYSON, | No.  53742-7-II |
| Petitioner, | |
| v. | |
| DELVIA JOY ABILA, and STATE OF WASHINGTON DEPARTMENT OF SOCIAL & HELTH SERVICES, | UNPUBLISHED OPINION |
| Respondents. | |

SUTTON, J. — Tommy Tyson appeals the superior court's order adopting the administrative law judge's (ALJ's) final order setting child support for his minor children, JT and AT.[1]  Tyson argues that he is gainfully employed because he has sufficient funds to support himself without working, and thus, the ALJ erred by applying former RCW 26.91.071(6)(a)-(e) (2011) to impute income to him based on his historical earnings.  Tyson also requests an award of appellate attorney fees and costs.

We hold that substantial evidence supports the ALJ's finding that Tyson was not gainfully employed full time and was voluntarily unemployed, and thus, the ALJ correctly applied former RCW 26.19.071(6)(a)-(e) by imputing income to Tyson based on his historical earnings.  We

---

[1] Tyson filed a separate appeal, number 53749-4-II, regarding his child support for his third minor child, BT.

affirm the superior court's order adopting the ALJ's final order and deny Tyson's request for appellate attorney fees and costs.

FACTS

I. LEGAL BACKGROUND

The legislature adopted the uniform child support schedule as a means to equitably apportion the child support obligation between the parents, ensure child support is adequate to meet a child's basic needs, and provide additional child support commensurate with the parents' income, resources, and standard of living. RCW 26.19.001. "Whenever the [Department of Social and Health Services] receives an application for public assistance on behalf of a child, the [D]epartment shall take appropriate action . . . to establish or enforce support obligations against the parent or other persons owing a duty to pay support moneys." RCW 74.20.040(1).

RCW 74.20A.055 allows the Department to seek child support from a noncustodial parent when there is no court order setting child support or relieving a parent from having to pay child support. If the Department establishes child support, it uses the same child support schedule as do the superior courts. RCW 26.19.001; RCW 26.19.035(1). This is the statutory process used by the Department to determine Tyson's child support obligation.

If a parent objects to the child support as set by the Department, he may request a hearing from the Office of Administrative Hearings before an ALJ. WAC 388-14A-3110, -3130(2), (4). The noncustodial parent seeking revision of the child support bears the burden of proving defenses to liability and must show cause why the finding of responsibility and/or amount the Department set for child support is incorrect. RCW 74A.20.055(1); WAC 388-14A-3115(15). The ALJ's order is the Department's final order. WAC 388-14A-6115(1).

2

## II. FACTUAL BACKGROUND

Tyson adopted three children, JT, AT, and BT. In late 2016, Tyson was laid off from his job. The State initiated dependency proceedings against Tyson involving Tyson's three children.

In an uncontested shelter care hearing, all three children were removed by the Department from Tyson's custody in 2018 and placed in separate households. In January 2018, the Department began paying cash assistance for JT and AT, called Temporary Assistance for Needy Families. When JT's and AT's custodians applied for the public assistance on behalf of the children, they assigned to the State of Washington the right to receive child support from Tyson. At that time, there was no court order requiring that Tyson pay child support for JT and AT, and thus, the Department filed an administrative action to establish his child support obligation and served him with a notice and finding of financial responsibility. The notice based Tyson's child support obligation on an imputed net income of $8,709 per month.

Tyson filed a request for an administrative hearing to contest the child support. The Department's Office of Administrative Hearings held a hearing. At the hearing, Tyson appeared with counsel, and the custodian of JT and AT appeared pro se.

At the hearing, the evidence showed that Tyson worked for about 15 years in the technology industry before he was laid off in the third or fourth quarter of 2016. While he was unemployed, Tyson received unemployment benefits through December 2016. During the seven years before he was laid off, Tyson had been employed at a "large, nationally recognized, and long-established software company." Clerk's Papers (CP) at 10. In the last 12 months of Tyson's employment, Tyson received gross wages totaling $145,000.22, or gross wages averaging

$12,083.35 per month. Tyson also purchased a home for $450,000 in April 2016, and he continued living in that home at the time of the hearing.

A representative from the Department testified at the hearing, as did the custodian for one of the children. Tyson did not testify at the hearing, but instead relied on his hearing request in which he asserted that he was unable to find work in the technology industry due to his age. Tyson did not submit any evidence that he attempted to find work after his unemployment benefits ended.

Tyson also claimed that he was a stay-at-home father. He claimed that his primary sources of income were sufficient to support himself and his children: $1,600 per month in adoption support from the State of Washington, income of $22,685 per year from a rental property, $231 in taxable interest, and annual dividends in the amount of $4,282, for a monthly income of $3,866.51. Tyson's 2017 tax return showed that he had no wages and had a negative income of $3,065.

After hearing the testimony and considering the evidence, the ALJ applied the statutory factors in RCW 26.19.071(6) and entered the following relevant findings of fact:[2]

> 7. The NCP is fifty-one (51) years of age. The NCP is unemployed. The NCP has been unemployed since the 3rd, or 4th, quarter of 2016.
>
> 8. There is no evidence in this matter that the NCP has made any efforts to look for work since December 2016.
>
> 9. There is no evidence in this matter that the NCP was a victim of age discrimination, in his layoff in the 3rd quarter of 2016.
>
> 10. There is no evidence in this matter that the NCP has been a victim of age discrimination in the context of employment hiring, since the NCP's layoff in the 3rd or 4th quarter of 2016.

---

[2] The ALJ referred to Tyson as the noncustodial parent, or NCP, throughout his findings of fact and conclusions of law.

11. Prior to the end of 2016, the NCP had been employed in the technology industry for fifteen (15) years without any significant breaks in employment.

12. During the seven (7) years preceding his layoff in the 4th quarter of 2016, the NCP had been employed at a large, nationally recognized, and long-established software company . . . . The NCP received gross wages from his last employer of $42,675.00 in the 3rd quarter of 2016, but the NCP's last employer reported 0 hours worked by the NCP in that quarter. During the last twelve months of employment in which his last employer reported hours worked by the NCP, the NCP received gross wages totaling $145,000.22, or gross wages averaging $12,083.35 per month.

13. After the NCP was laid off, he received unemployment compensation of $598.00 per week through December 2016, and, during the time between his lay off and the end of December 2016, the NCP was required, as a condition of receiving unemployment compensation, to look for work, and apparently did so.

14. There is no evidence in this matter showing that the NCP was employed for wages from December 2016 through the present.

15. There is no evidence in this matter of a plan for reunification of the NCP with either of the Children.

16. There is no evidence in this matter that the NCP has claimed, or filed an application for, or received, benefits from a state, or from the federal government, on the basis of being disabled from working.

17. There is no evidence in this matter of any medical condition of the NCP limiting his ability to look for and maintain full-time employment.

. . . .

19. The NCP's monthly net income is $8977.60, based on imputing gross income to the NCP of the monthly gross average wages he received during the last twelve months in which his last employer reported hours worked by him, namely, $12,083.35, and making mandatory deductions for him.

. . . .

24. The NCP has paid no child support for the Children and has not incurred any expenses for the benefit of the Children during the period in issue.

5

CP at 9-11 (internal citations omitted). Based on these undisputed findings, the ALJ concluded that Tyson was voluntarily unemployed as defined in former RCW 26.19.071(6):

> 13. The Tribunal concludes that the NCP is voluntarily unemployed based on (1) his fifteen (15) year employment in the technology industry, without significant break, until the 3rd or 4th quarter of 2016, (2) his continuous employment for the seven (7) years preceding the 4th quarter of 2016 for a single, nationally recognized, and well-established software company, (3) his average monthly gross wages of $12,083.35 with this software company during the last year in which he had hours reported for work, (4) no evidence in this matter that the NCP has looked for work since December 2016, (5) no evidence the NCP has applied for benefits claiming that he is disabled from working, and (6) no evidence the NCP has any medical condition limiting his ability to look for, and maintain, full-time employment. There is good cause here to impute to the NCP full-time earnings at the NCP's historical rate of pay during the last year in which he received wages for hours worked, as reported by his last employer, namely, $12,083.35 per month, which is based on reliable information, namely, employment security department data for him.

CP at 14 (internal citation omitted). The ALJ set the child support at $786 per month per child for JT and AT beginning July 1, 2018, set back support of $9,279.88 from January 4, 2018 through June 30, 2018, and entered a final order.

Tyson petitioned for review from the superior court of the ALJ's final order under the Administrative Procedure Act (APA), chapter 34.05 RCW. After a hearing, the superior court adopted the ALJ's findings of fact and conclusions of law, and affirmed the ALJ's final order.

Tyson appeals.

### ANALYSIS

#### I. IMPUTED INCOME

Tyson argues that the ALJ's finding that he was voluntarily unemployed is not supported by substantial evidence in the record, and the ALJ erred by imputing Tyson's historical earnings to set child support for JT and AT. We disagree.

A. STANDARD OF REVIEW

An ALJ's final order in a proceeding to set child support is reviewed under the judicial review provisions of the APA. RCW 74.20A.055(1); WAC 388-14A-6120(6). "This court sits in the same position as the superior court and applies APA standards to the administrative record." *Griffith v. Dep't of Employment Sec.*, 163 Wn. App. 1, 6, 259 P.3d 1111 (2011).

We will reverse the ALJ's decision if it is not supported by substantial evidence or if the ALJ "erroneously interpreted or applied the law." RCW 34.05.570(3)(d), (e). An order is supported by substantial evidence and the decision will be upheld "if supported by a sufficient quantity of evidence to persuade a fair-minded person of the order's truth or correctness." *Crosswhite v. Dep't of Soc. & Health Servs.*, 197 Wn. App. 539, 548, 389 P.3d 731 (2017).

Unchallenged findings, such as those here, are verities on appeal. *Darkenwald v. Dep't Employment Sec.*, 183 Wn.2d 237, 244, 350 P.3d 647 (2015). We review de novo whether the findings support the conclusions of law. *Olympic Healthcare Servs. II LLC v. Dep't of Soc. & Health Servs.*, 175 Wn. App. 174, 181, 304 P.3d 491 (2013).

B. VOLUNTARY UNEMPLOYMENT AND IMPUTATION OF INCOME

The ALJ must consider all income and resources from each parent when determining child support. Former RCW 26.19.071(1) (2011). This includes, but is not limited to: salaries, wages, commissions, deferred compensation, dividends, interest, and social security benefits. Former RCW 26.19.071(3)(a)-(d), (h)-(i), (s) (20011). When calculating a child support obligation, RCW 26.19.071(6) requires that income be imputed "to a parent when that parent is voluntarily unemployed or voluntarily underemployed." *In re Marriage of Pollard*, 99 Wn. App. 48, 52-53, 991 P.2d 1201 (2000). The ALJ bases this determination on "that parent's work history, education,

health, and age, or any other relevant factors." Former RCW 26.19.071(6) (2011). "A court shall not impute income to a parent who is gainfully employed on a full-time basis, unless the court finds that the parent is voluntarily underemployed and finds that the parent is purposely underemployed to reduce the parent's child support obligation." Former RCW 26.19.071(6) (2011).

If the court must impute income, in the absence of evidence of actual earnings, it does so based on records that are statutorily prioritized, including: "(a) Full-time earnings at the current rate of pay; [and] (b) Full-time earnings at the historical rate of pay based on reliable information, such as employment security department data." Former RCW 26.19.071(6)(a)-(b) (2011).

C. ANALYSIS

Tyson argues that he is gainfully employed because he has a monthly income of $3,866.51, which includes prior adoption support of $1600 per month, rental income and dividends, and he contends that the funds are sufficient funds to support him without requiring him to work. He also argues he is a stay at home dad. Thus, he argues, the ALJ's finding that he was voluntarily unemployed is not supported, and the ALJ erred by imputing his historical earnings to set his child support obligation. We hold that the ALJ's findings are supported by substantial evidence and the ALJ properly applied RCW former 26.19.071(6)(b) to impute Tyson's historical earnings to set his child support obligation; thus, the ALJ did not err.

1. Tyson Is Not Gainfully Employed Full-time

The ALJ's findings of fact support its conclusions of law. Tyson is not gainfully employed and has not been since he was laid off in the third or fourth quarter of 2016. Tyson has not sought new employment since his unemployment benefits expired in December 2016.

8

2. Adoption Support Payments Are Not Sources of Income for Child Support

Tyson appears to argue that his receipt of adoption support from the State should be factored into his income for the purpose of finding that he is gainfully self-employed. We disagree and hold that Tyson's receipt of adoption support from the State cannot be considered as income for the purpose of finding that Tyson is gainfully self-employed.

Under former RCW 26.19.071(3), adoption support payments are not earnings included in the income sources to be considered under when setting child support. Further, the adoption support Tyson received was in the past. Tyson has not provided support for his children since they were removed from his home in 2018. Nor did he seek to reunify with them.

3. Caselaw Does Not Support Tyson's Arguments

Tyson argues that this case is analogous to *In re Marriage of Kaplan*, 4 Wn. App. 2d 466, 421 P.3d 1046 (2018), a Division I case. In that case, the court held that the superior court erred by imputing income based on the specific facts of that case. *Marriage of Kaplan*, 4 Wn. App. 2d at 487. "[W]here, as here, a spouse in a long-term marriage stays home to care for the children and manage the household while the other spouse works outside the home," the stay-at-home spouse is not voluntarily unemployed or voluntarily underemployed. *Marriage of Kaplan*, 4 Wn. App. 2d at 486. The wife had stayed home for 20 years to support her husband's career. *Marriage of Kaplan*, 4 Wn. App. 2d at 471-72. She offered evidence at trial that supported that, although she had a college degree, she would have difficulty finding a high-paying job as a result of her long period of time out of the workforce. *Marriage of Kaplan*, 4 Wn. App. 2d at 472. The superior court awarded the wife monthly maintenance, and the appellate court held that imputing her

income for child support would counteract the purpose of the maintenance. *Marriage of Kaplan*, 4 Wn. App. 2d at 471, 485.

*Kaplan* is distinguishable. Tyson has been out of the workforce for only five years as opposed to the 20 years in *Kaplan*. The court found that Tyson has not tried to find a job since being laid off in 2016.

In *Marriage of Pollard*, 99 Wn. App. at 53, we held that income should be imputed for the mother's child support obligation when she worked fulltime as a mother and homemaker, as that was not "'gainful'" employment. And in *In re Marriage of Brockopp*, 78 Wn. App. 441, 446 n.5, 898 P.2d 849 (1995), we clarified that voluntary unemployment is "unemployment that is brought about by one's own free choice and is intentional rather than accidental."

Under the facts of this case, we find that Tyson is voluntarily unemployed.

4. The ALJ's Findings and Imputation of Historical Earnings

Based on the findings of fact, the ALJ correctly concluded that "[t]here is good cause here to impute to the NCP full-time earnings at the NCP's historical rate of pay during the last year in which he received wages for hours worked, as reported by his last employer, namely, $12,083.35 per month, which is based on reliable information, namely, employment security department data for him." CP at 14. Given Tyson's lack of effort to find employment and his historical earnings, the ALJ properly determined under former RCW 26.19.071(6) that Tyson was voluntarily unemployed and properly imputed monthly net income to Tyson in the amount of $8,977.60 based on his historical earnings. We affirm the superior court's order adopting the ALJ's final order.

II.  APPELLATE ATTORNEY FEES AND COSTS

In the last sentence of his conclusion, Tyson asks for an award of appellate attorney fees and costs.  We deny Tyson's request.

RAP 18.1(a) authorizes a party to recover reasonable attorney fees and costs so long as the party "request[s] the fees or expenses."  The party must do so in a separate section of his or her opening brief.  RAP 18.1(b).  And the party's brief must include "[t]he argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record."  RAP 10.3(a)(6).

Here, Tyson failed to devote a separate section to his request, and he failed to provide any law or factual support for his request.  Accordingly, we deny Tyson's request for appellate attorney fees and costs.

CONCLUSION

We affirm the superior court's order adopting the ALJ's final order and deny Tyson's request for appellate attorney fees and costs.

A majority of the panel has determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

LEE, C.J.

MAXA, J.